**Mauricio CELIS, Appellant**

v.

**The STATE of Texas.**

**Nos. PD–1584–11, PD–1585–11.**

Court of Criminal Appeals of Texas.

May 15, 2013.

David L. Botsford, Attorney at Law, Austin, TX, for Appellant.

Ellen Stewart–Klein, Assistant Attorney General, Lisa C. McMinn, State's Attorney, Austin, TX, for the State.

## OPINION

ALCALA, J., announced the judgment of the Court and delivered an opinion in which KELLER, P.J., PRICE and KEASLER, JJ., joined.

In deciding the petition for discretionary review filed by Mauricio Celis, appellant, we address three jury-charge complaints. First, we determine that the offense of falsely holding oneself out as a lawyer, as it applies here, does not require an instruction as to a culpable mental state beyond the intent expressly prescribed by the plain language in that statute. *See* TEX. PENAL CODE § 38.122. Second, we conclude that appellant was not entitled to an instruction on a mistake-of-fact defense because his requested instruction did not negate the culpability required for the offense. *See* TEX. PENAL CODE § 8.02(a). Third, we hold that the court of appeals properly determined that the trial court's instruction on the definition of "foreign legal consultant" was not an improper comment on the weight of the evidence. *See* TEX.CODE CRIM. PROC. art. 36.14. We affirm.

## I. Background

It is undisputed that, although appellant was never licensed to practice law in Texas or any other jurisdiction, he continuously held himself out as a lawyer in Texas over a period of several years in a lucrative business.[1] Appellant acknowledged that he did not have a "cedula," or Mexican law license, nor a certificate from Mexico's Ministry of Education, which documents that a person currently meets the requirements to practice law in Mexico. Rather,

he testified that he has a diploma in judicial sciences and that he, therefore, believed that he was "considered a lawyer in Mexico." He called two witnesses who testified that every Mexican citizen who was of legal age and sound mind is a "licenciado," meaning a person authorized to practice certain types of law in Mexico.

Appellant was charged with 23 counts of falsely holding himself out as a lawyer in violation of Texas Penal Code Section 38.122, which, hereafter, we refer to as the "false-lawyer statute." TEX. PENAL CODE § 38.122. With respect to a culpable mental state, the trial court's instructions required the jury to determine only whether appellant intended to obtain an economic benefit for himself in holding himself out as a lawyer. The instructions did not include a culpable mental state with respect to the remaining elements that alleged that appellant had held himself out as an attorney, was not currently licensed to practice law, and was not in good standing with the State Bar of Texas and other applicable authorities. Tracking the language of the false-lawyer statute, the charge instructed, in relevant part,

> Now, if you find from the evidence beyond a reasonable doubt that on or about [date], in Nueces County, Texas, the Defendant, Mauricio Celis, did then and there, with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to wit: [by manner and means], and the defendant was not then and there licensed to practice law in this state, another state, or a foreign country and was not then and there in good standing with the State Bar of Texas

1. This conduct included stating on a business card and a web page that he was an attorney and licensed to practice law in Mexico; signing a legal document in a place designated for an attorney's signature; stating, in a professional-liability insurance application, that he

was admitted to the bar in 2000, had been a full-time attorney for seven years, and was a member in good standing of the state bar of Mexico; and accepting checks for attorney's fees amounting to more than $1.3 million.

and the state bar or licensing authority of any state or foreign country where the defendant was licensed to practice law, then you will find the defendant guilty of the offense of falsely holding himself out as a lawyer as charged in the indictment.

*See* Tex. Penal Code § 38.122. In declining to instruct the jury on an additional culpable mental state, the court overruled appellant's request to add the word "intentionally" before the phrase "did then and there" so as to require the jury to find that he intended every element of the offense. The trial court also overruled appellant's request for a mistake-of-fact instruction on his alleged mistaken belief that he was licensed to practice law by, and in good standing with, the licensing authority of Mexico.

■ The charge defined "good standing," stating,

"Good standing with the State Bar of Texas" means:

(1) Being a "Member in Good Standing" of the State Bar of Texas; or

(2) Being certified to practice in Texas as a Foreign Legal Consultant by the Texas Board of Law Examiners.

A "Member in Good Standing" of the State Bar of Texas is someone who meets and complies with all applicable requirements of the Rules of the Supreme Court of Texas governing admission to the bar of Texas, and who is not in default of payment of dues and who is not under suspension from practice.

A "Foreign Legal Consultant" is someone certified under the Rules of the Supreme Court of Texas governing admission to the Bar of Texas, and who is considered a lawyer affiliated with the Bar of Texas.

Appellant objected to the instruction defining the term "foreign legal consultant" as an improper comment on the weight of the evidence, which the trial court overruled. The jury found appellant guilty on 14 counts and assessed a 10–year sentence for each offense, probated for 10 years.

On appeal, appellant challenged the trial court's overruling of his three jury-charge complaints. The court of appeals upheld the trial court's rulings, determining that the statute's culpable mental state was limited to the intent to obtain an economic benefit; that no mistake-of-fact instruction was required; and that the trial court properly defined the term "foreign legal consultant." We granted review of appellant's three jury-charge issues.[2]

## II. Culpable–Mental–State Analysis

In his first issue for discretionary review, appellant contends that the court of appeals erred by overruling his challenge to the trial court's denial of an instruction on a culpable mental state beyond the one prescribed in the statute. As on direct appeal, he contends that the statute defining the offense of falsely holding oneself out as a lawyer is silent on the requirement of a culpable mental state and does not plainly dispense with one, and that the trial court, therefore, was required to instruct as to one. *Celis v. State*, 354 S.W.3d 7, 27 (Tex.App.–Corpus Christi 2011) (citing Tex. Penal Code §§ 6.02,

---

**2.** Appellant's three jury-charge issues state:
(1) The court of appeals erred by holding that a culpable mental state was not required under [the false-lawyer statute].
(2) The court of appeals erred by holding that appellant was not entitled to a charge on mistake of fact.

(3) The court of appeals erred by holding that inclusion of a definition of the term "foreign legal consultant" in the jury charge was not error.

38.122). The court of appeals was "not persuaded that the [statute] is silent on the requirement of a culpable mental state." *Id.* It held that the statute prescribed a mental state through the requirement that the defendant act with the "intent to obtain an economic benefit for himself," which satisfied "the traditional mens rea requirement of the criminal law." *Id.* We agree.

### A. Standard of Review

■■■ The trial court must give the jury a written charge that sets forth the law applicable to the case. TEX.CODE CRIM. PROC. art. 36.14. A charge that does not set out all of the essential elements of the offense is fundamentally defective. *Martin v. State,* 200 S.W.3d 635, 639 (Tex. Crim.App.2006); *Zuckerman v. State,* 591 S.W.2d 495, 496 (Tex.Crim.App.1979). Appellate review of claims of jury-charge error involves a determination of whether the charge is erroneous and, if it is, a harm analysis. *Kirsch v. State,* 357 S.W.3d 645, 649 (Tex.Crim.App.2012). Because there is no charge error in this case, we need not conduct a harm analysis.[3]

### B. Presumption of Culpable Mental State and Statutory Interpretation

"If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." TEX. PENAL CODE § 6.02(b); *see also Aguirre v. State,* 22 S.W.3d 463, 472 (Tex.Crim.App.1999). Therefore, the two pertinent questions are whether the statute defining the offense of holding oneself out as a lawyer prescribes a culpable mental state and, if not, wheth-

er a mental state is nevertheless required. This Court has enumerated several factors that courts may consider "in deciding whether the legislature meant to impose liability without fault or, on the other hand, really meant to require fault though it failed to spell it out clearly." *Aguirre,* 22 S.W.3d at 475. Factors relevant to this case include (1) the language of the statute and (2) the nature of the conduct regulated, the risk of harm to the public, and the defendant's ability to ascertain facts. *Id.* at 475–76.

### 1. Plain Language Suggests That No Additional Culpable Mental State Is Required

■■■ Statutory "words and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE § 311.011(a); *Tovar v. State,* 978 S.W.2d 584, 586 (Tex.Crim. App.1998). It is well settled that the complete omission from a statute of any mention of intent will not necessarily be construed as eliminating that element from an offense. *Aguirre,* 22 S.W.3d at 471. However, the prescription of a mental state as to certain portions of a statute, but not as to others, is compelling evidence that the Legislature intended to dispense with a mental state as to the latter. *Id.* at 473 (observing that "omission of a culpable mental state from only one of the four sections was a clear implication of the legislature's intent to dispense with a mental element in that section").

■■■ The statute describing the offense of holding oneself out as a lawyer states,

---

**3.** When a defendant properly preserved a complaint as to the charge, the standard of harm is whether "the error appearing from the record was calculated to injure the rights of defendant," which we have construed as "some harm." TEX.CODE CRIM. PROC. art.

36.19; *Trevino v. State,* 100 S.W.3d 232, 242 (Tex.Crim.App.2003). Conversely, unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Pickens v. State,* 165 S.W.3d 675, 680 (Tex. Crim.App.2005).

A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person holds himself or herself out as a lawyer, unless he or she is currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed.

TEX. PENAL CODE § 38.122(a). It is plain from the structure of the text in Subsection (a) that the only mental state prescribed—"with intent"—modifies and applies only to the element "to obtain an economic benefit for himself or herself." *Id.* The most natural grammatical reading of the statute suggests that that mental state does not extend to either (1) the element set forth after that phrase, i.e., "the person holds himself ... out as a lawyer," or (2) the elements expressed in the subsequent dependent clause beginning with "unless," i.e., the licensing and good-standing requirements. *See id.* In other words, the statute does not expressly prescribe a mental state as to anything other than acting to obtain an economic benefit. This prescription of a mental state as to one element and not as to others sufficiently demonstrates the Legislature's intent to dispense with a mental

state as to those other elements. *See Aguirre,* 22 S.W.3d at 473; *see also Ex parte Smith* 645 S.W.2d 310, 311–12 (Tex. Crim.App.1983) (holding that theft statute requires only statutorily prescribed intent "to deprive the owner of property" and not "an independent culpable mental state" with respect to appropriating property without owner's consent). We are unpersuaded by appellant's argument that the Legislature must more expressly indicate its intent to dispense with a culpable mental state than by its specific inclusion of a culpable mental state as to some elements and its exclusion of that requirement as to others.

In other cases involving grammatically similar statutes, we have construed prescription of a mental state only as to some elements as evincing legislative intent to dispense with a mental state as to other elements. In *Long v. State,* in which we interpreted the "stalking statute," [4] we concluded that, by prescribing a mental state in one section of the statute but omitting a mental state in a subsequent subsection, "the legislature plainly dispensed with any additional mental state in [that subsection] that might otherwise be required." 931 S.W.2d 285, 291 (Tex.Crim. App.1996). Similarly, in *Johnson v. State,* we interpreted the indecency-with-a-child statute [5] as dispensing with a mental state

---

4. The former stalking statute provided, "(a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he ... (7)(A) on more than one occasion engages in conduct directed specifically toward the [victim] ... and (C) on at least one of those occasions engages in the conduct after the [victim] has reported to a law enforcement agency the conduct...." Former TEX. PENAL CODE § 42.07(a) (West 1993). The *Long* Court concluded that, given the mental state prescribed in Section (a), the Legislature plainly dispensed with a mental state in Subsection (7)(C). *Long v. State,* 931 S.W.2d 285, 291 (Tex.Crim.App.1996).

5. The former indecency-with-a-child statute states, in relevant part, "(a) A person commits an offense if, with a child younger than 17 years and not his spouse, whether the child is of the same or opposite sex, he: (1) engages in sexual contact with the child; or (2) exposes his anus or any part of his genitals, knowing the child is present, with intent to arouse or gratify the sexual desire of any person." Former TEX. PENAL CODE § 21.11 (West 1998). Judge Price, concurring, noted that, because subsection (a)(2) "contains the mental elements 'knowing' and 'intent,' and [because] those same mental elements are apart from [subsection (a)], which specifies

as to the child's age in keeping with "the clear legislative intent." 967 S.W.2d 848, 849 (Tex.Crim.App.1998). And in *Lomax v. State*, in which we held that the felony-murder statute [6] did not require a culpable mental state, we stated that "[i]t is significant and largely dispositive that [the felony-murder subsection] omits a culpable mental state while the other two subsections in [that section] expressly require a culpable mental state." 233 S.W.3d 302, 304 (Tex.Crim.App.2007). We concluded that this was "a clear implication of the legislature's intent to dispense with a mental element in that [sub]section." *Id.*[7] The plain language used to describe the offense of holding oneself out as a lawyer, therefore, suggests that a person can be held criminally responsible for holding himself out as a lawyer if he does not satisfy the licensing and good-standing requirements, so long as he does so intending to obtain an economic benefit.

Furthermore, we note that the statute first defines holding oneself out as a lawyer for profit as criminal, followed by the subordinate conjunction "unless." TEX.

PENAL CODE § 38.122. This indicates that the Legislature intended to criminalize the conduct "unless" certain criteria are met. *See id.* In short, the statute defines conduct as unlawful unless other circumstances exist. This further indicates that the Legislature did not intend for a mental state to apply to the circumstances set forth in the statute that render the otherwise unlawful conduct lawful.

### 2. Nature of Conduct Suggests That No Additional Culpable Mental State Is Required

#### a. Acting as a lawyer is highly regulated conduct

The statute at issue in this case is substantially analogous to the ordinance construed in *Tovar v. State*, in which this Court held that criminal liability may be imposed without proof of a culpable mental state for certain types of conduct that place upon a person a duty to understand and comply with applicable legal requirements. 978 S.W.2d at 587. Interpreting the Closed Meeting Act,[8] we held that it

---

the age of the victim, the intent of the legislature was to dispense with a culpable mental state as to the victim's age." *Johnson v. State*, 967 S.W.2d 848, 852 (Tex.Crim.App.1998) (Price, J., concurring). Citing *Long*, Judge Price reasoned that, although there was no statutory language expressly dispensing with the mental-state requirement, "it is precisely the *absence* of a culpable mental state as to the victim's age, when the legislature has prescribed mental elements as to other portions of the offense, that makes the legislative intent clear." *Id.* (citing *Long*, 931 S.W.2d at 291).

6. The felony-murder statute provides that a person commits the offense of murder if he "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(3).

7. *See also Schultz v. State*, 923 S.W.2d 1, 2 (Tex.Crim.App.1996) (construing the child-abandonment statute at Texas Penal Code Section 22.041(b), holding that "the fact that 'intentionally' immediately precedes 'abandons' means that the prescribed mental state is connected with the act of abandonment itself" rather than element of surrounding circumstances); *Neill v. State*, 154 Tex.Crim. 549, 229 S.W.2d 361, 363 (1950) (construing meat-inspection statute, which prescribed mental states as to some elements and not as to others, as not requiring proof of a mental state as to latter elements).

8. The Closed Meeting Act provides, "A member of a governmental body commits an offense if a closed meeting is not permitted under this chapter and the member knowingly: (1) calls or aids in calling or organizing the closed meeting, whether it is a special or called closed meeting; (2) closes or aids in closing the meeting to the public, if it is a

did not require proof of a mental state with respect to whether a closed meeting was statutorily prohibited, although it did expressly prescribe a mental state as to other elements. *Id.* at 587–88. Examining its language "and the rules of grammar and common usage," we determined that it plainly dispensed with a culpable mental state as to whether the meeting was not permitted to be closed. *Id.* at 587. We also observed that the plain-language reading was consistent with the Act's "purpose of safeguarding the public's interest in knowing the workings of its governmental bodies" and noted that it "places a duty upon members of governmental bodies to hold open meetings and a concomitant duty to find an exception to the general rule if they desire to have a closed meeting." *Id.* It criminally sanctioned "neglect where the law requires care, or inaction where it imposes a duty." *Id.*[9]

 Like the ordinance in *Tovar,* the false-lawyer statute delineates a mental state, though not a traditional mens rea, or "criminal intent." *See Tovar,* 978 S.W.2d at 590. This statute, which applies to those who hold themselves out as lawyers for economic gain, evinces a legislative intent to impose a duty of care upon those who engage in that conduct. *See* TEX. PENAL CODE § 38.122. The statute, therefore, regulates conduct for which "special skill and attention may reasonably be demanded." *See Aguirre,* 22 S.W.3d at 475 n. 44. The special skill of practicing law (and representing oneself as a lawyer) has long been subject to the attention of, and strict regulation by, the States.[10] This regulation is intended to protect the public from untrained individuals, who endanger the public's personal and property rights, as well as the orderly administration of the judicial system. *See Brown v. Unauthorized Practice of Law Committee,* 742 S.W.2d 34, 41–42 (Tex.App.–Dallas 1987, writ denied) ("The objective is to protect the public against injury from acts or services, professional in nature, deemed by both the legislature and the courts to be

regular meeting; or (3) participates in the closed meeting, whether it is a regular, special, or called meeting." TEX. GOV'T CODE § 551.144(a); *Tovar v. State,* 978 S.W.2d 584, 586 (Tex.Crim.App.1998).

9. By comparison, in *Aguirre v. State,* we construed a municipal ordinance that provided that "[n]o person shall own, operate or conduct any business in an adult bookstore, adult motion picture theater or nude live entertainment club within one thousand feet of" certain types of property. 22 S.W.3d 463, 464 n. 1 (Tex.Crim.App.1999). Although the ordinance did not expressly prescribe any mental state, the Court held that proof of a culpable mental state was required. *Id.* at 476. Among other extratextual factors, the Court considered whether the statute defined a strict-liability offense. *Id.* at 472. The Court explained that, although "[s]ome features of the ordinance are consistent with imposing strict liability … it is hardly in the class of public-safety statutes that we have found to impose strict liability." *Id.* at 476. We noted that the ordinance was unlike many public-welfare statutes that "presuppose a continuous activity, such as carrying on a business." *Id.* at 475. We observed that, with respect to such activity, "(a) special skill and attention may reasonably be demanded, and (b) if the law is broken there will be a suspicion that it was a deliberate breach due to self-interest." *Id.* at 475 n. 44 (internal quotations and citations omitted).

10. *See Cummings v. Missouri,* 71 U.S. 277, 319, 4 Wall. 277, 18 L.Ed. 356 (1866) (states may impose reasonable regulations on practice of law); *NAACP v. Button,* 371 U.S. 415, 456, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) ("[T]he regulation of professional standards for members of the bar comes to us with even deeper roots in history and policy, since courts for centuries have possessed disciplinary powers incident to the administration of justice."); *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1066, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) ("In the United States, the courts have historically regulated admission to the practice of law before them.").

the practice of law, done or performed by those not deemed by law to be qualified to perform them.").

■ The plain language reveals the Legislature's intent to impose upon those who hold themselves out as lawyers for an economic benefit a duty to know and comply with applicable regulations, enforceable by criminal penalties.[11] Balancing relative hardships, the Legislature has placed the burden of complying with conditions imposed for the protection of the public upon those who hold themselves out as lawyers for profit, rather than placing upon the public the burden of determining whether an individual is qualified and eligible to provide legal services. *See United States v. Dotterweich*, 320 U.S. 277, 280–81, 64 S.Ct. 134, 88 L.Ed. 48 (1943). Given the nature of the conduct regulated and the public expectation that such conduct is subject to stringent regulation, this is further indication that the Legislature intended to dispense with any culpable mental state beyond that which it prescribed.

We conclude that the plain language of the false-lawyer statute requires proof of a mental state only as to the economic-benefit element and plainly dispenses with any additional culpable-mental-state requirement. TEX. PENAL CODE § 38.122. It imposes upon those who hold themselves out as lawyers a duty to be aware of, and comply with, statutory requirements. This interpretation is supported by the statutory language and policy considerations and does not yield an absurd result. The trial court, therefore, did not err in instructing as to only the mental state expressly prescribed in the statute.

### b. Unlawfully acting as a lawyer is not a "circumstances" type offense

Appellant argues that the false-lawyer statute is analogous to statutes that we have interpreted as requiring a culpable mental state as to the nature of the conduct, the result of the conduct, or the circumstances surrounding the conduct, citing in support *McQueen v. State*, 781 S.W.2d 600 (Tex.Crim.App.1989). In *McQueen*, we construed the statute defining unauthorized use of a motor vehicle, which provides, "A person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner." *Id.* at 603 (citing TEX. PENAL CODE § 31.07(a)). We held that "a culpable mental state applies to whether the defendant knew his use of the motor vehicle was without the effective consent of the owner." *Id. McQueen*, however, is distinguishable in two ways. First, the language of that statute was ambiguous as to whether the prescribed mental state modified only the conduct element "operates" or also modified the circumstance element, without the owner's consent.[12]

---

11. Our interpretation is further supported by the fact that the Legislature limited the statute to penalize only those who engage in the proscribed conduct with intent to gain an economic benefit. This significantly narrows the scope of the statute so as to avoid ensnaring those who offer free advice that happens to be legal in nature, such as the "jailhouse lawyer" or individuals working pro bono, or those who represent themselves as lawyers for other reasons, such as currying social favor. *See Ex parte Manrique*, 40 S.W.3d 552, 554 (Tex.App.–San Antonio 2001, no pet.) (noting

that "[p]urely gratuitous comments do not fall within the penal statute" given statute's requirement that intent to obtain an economic benefit be proven).

12. *McQueen v. State*, 781 S.W.2d 600, 603–04 (Tex.Crim.App.1989) ("The confusion concerning culpability in an unauthorized use of a motor vehicle case stems in part from the fact that the culpable mental state of 'intentionally or knowingly' prescribed by the statutory language does not syntactically modify the circumstances surrounding the conduct

Here, the statutory language plainly indicates that "intent" modifies only the economic-benefit element and not the non-lawyer-status elements.

Second, critical to the *McQueen* analysis was that the conduct regulated by the statute—operating another's motor-propelled vehicle—is an "otherwise lawful act" that becomes criminal only under certain circumstances, namely, when done without the owner's consent. *Id.* at 604. Declining to construe the statute as dispensing with a mental state as to that element, we observed that "[t]o require culpability only as to the otherwise lawful act of operating a vehicle wholly fails to safeguard conduct that is without guilt from condemnation as criminal." *Id.* We, therefore, concluded that this was a "circumstances" type offense, which requires application of a culpable mental state to the criminalizing circumstances. *Id.* at 603. By contrast, holding oneself out as a lawyer for economic gain is not an "otherwise lawful act"; rather, as previously discussed, it is

but instead precedes the act of operating a vehicle."); *see also Liparota v. United States*, 471 U.S. 419, 424 n. 7, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (interpreting statute that provided that "whoever knowingly uses, transfers, acquires, alters, or possesses coupons or other authorization cards in any manner not authorized by [the statute]" is subject to a fine and imprisonment, Supreme Court held that, "[a]s a matter of grammar the statute is ambiguous; it is not at all clear how far down the sentence the word 'knowingly' is intended to travel").

13. In general, courts have required proof of a culpable mental state as to conduct that would otherwise be innocent. *See Lugo–Lugo v. State*, 650 S.W.2d 72, 88 (Tex.Crim.App. 1983) (explaining that, when "circumstances surrounding conduct could make an otherwise benign act dangerous ... an additional culpable mental state as to that 'conduct element' would be required"); *Liparota*, 471 U.S. at 426, 105 S.Ct. 2084 (avoiding construing statute to dispense with mens rea where

conduct that has long been subject to a host of strict regulations that is prohibited "unless" a person complies with those numerous regulations. *See* TEX. PENAL CODE § 38.122. Unlike *McQueen*, the "circumstances" in this case—licensing and good standing with the proper authorities—render an otherwise unlawful act—holding oneself out as a lawyer for profit—lawful. We conclude that, in this case, the Legislature intended to limit the mental-state requirement to the economic-benefit element and to dispense with it as to the other statutory elements.[13]

### c. *Satterwhite* Is Inapposite

Appellant contends that, in *Satterwhite v. State*, this Court held that the offense of holding oneself out as a lawyer required proof of a culpable mental state beyond intent to obtain an economic benefit. 979 S.W.2d 626 (Tex.Crim.App.1998). In *Satterwhite*, this Court stated, "The record before us reflects that appellant intentionally and knowingly violated [the false-law-

doing so would "criminalize a broad range of apparently innocent conduct"); *Morissette v. United States*, 342 U.S. 246, 275–76, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (although appellant had admitted the conduct, "that isolated fact is not an adequate basis on which the jury should find the criminal intent to steal or knowingly convert, that is, *wrongfully* to deprive another of possession of property"). By contrast, courts generally have not required proof of an additional culpable mental state when a statute has already prescribed a culpable mental state as to at least one element of the offense. *See Schultz*, 923 S.W.2d at 4 (explaining that offense of abandoning or endangering a child can dispense with requirement of awareness of danger because person subject to that offense has already assumed a duty to act reasonably, and it is the neglect of this duty that is criminalized); *Lomax v. State*, 233 S.W.3d 302, 305 n. 7 (Tex.Crim.App. 2007) (felony-murder statute may dispense with mental-state requirement because statute "still requires a defendant to commit a felony involving a clearly dangerous act").

yer statute]." *Id.* at 628. However, this passing reference to criminal intent lacked any analysis as to whether the statute required proof that a defendant acted intentionally or knowingly. Furthermore, this was non-binding dictum because the issue on appeal was whether "a retroactive return to pre-suspension status via the payment of past-due State Bar dues excuses an attorney from prosecution for illegal conduct committed by an attorney during that attorney's period of suspension." *Id.* at 627; *see also Woolridge v. State,* 827 S.W.2d 900, 905 (Tex.Crim.App.1992) (dicta not binding). We disapprove of any suggestion in *Satterwhite* that the State must prove any additional mental states beyond that expressly prescribed in the statute.

### d. Plain-language reading does not yield an absurd result

Appellant next contends that construing the false-lawyer statute as dispensing with a mental state as to the licensing and good-standing elements would violate a defendant's due-process rights and, therefore, could not have been the Legislature's intent. However, appellant's cited cases focus not on due process, but on determining congressional intent in construing federal statutes. *See Morissette v. United States,* 342 U.S. 246, 248, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (construing congressional intent as requiring proof of intent in con-

version statute); *United States v. X-Citement Video, Inc.,* 513 U.S. 64, 68, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (child-pornography statute requires knowledge of victim's age); *Staples v. United States,* 511 U.S. 600, 618, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (gun-registration statute requires knowledge of type of gun possessed). Here, in examining the false-lawyer statute, we have determined that the Legislature intended to dispense with a culpable mental state as to the licensing and good-standing requirements.[14]

The court of appeals, therefore, did not err in upholding the jury charge, which instructed only as to the statutorily prescribed mental state of intent to obtain an economic benefit. *See Celis,* 354 S.W.3d at 28. We overrule appellant's first issue.

### III. Jury Instruction on Mistake of Fact

In his second issue, appellant contends that the court of appeals erred by overruling his challenge to the trial court's denial of a mistake-of-fact instruction. *Id.* The court of appeals held that appellant's alleged mistake did not negate the kind of culpability required for commission of the offense as statutorily required. *Id.* at 29 (citing TEX. PENAL CODE § 8.02(a)). That mistake, according to the court of appeals, may have been a mistake of law, but appel-

---

**14.** We express no opinion as to whether there might be other due-process concerns that could become pertinent under different circumstances, such as an attorney licensed in Texas who had been in good standing with the State Bar and continued to practice law because he had not received notification by the State Bar regarding his change in status. The present case does not contain facts that show that appellant had ever been in compliance with the State Bar rules or that he was deprived of notice of a change in his status with the State Bar. Furthermore, appellant does not challenge the constitutionality of the false-lawyer statute. We do not reach the

question of whether it may be unconstitutional as applied to another defendant under different circumstances. Furthermore, in *United States of America v. Ransom,* the Tenth Circuit observed that the Supreme Court has held that, "[i]n order to show that the exercise of [the Legislature's] power is inconsistent with due process, [an] appellant must demonstrate that the practice adopted by the legislature 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" 942 F.2d 775, 777 (10th Cir.1991) (citing *Snyder v. Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934)).

lant did not request that type of instruction. *Id.*

## A. Current Law Applicable to Mistake–of–Fact Defense

 A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of how the trial court views the credibility of the defense. *Allen v. State,* 253 S.W.3d 260, 267 (Tex. Crim.App.2008). The statute governing the mistake-of-fact defense provides that it is "a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." TEX. PENAL CODE § 8.02(a). When he raises evidence of a mistaken belief as to the culpable mental state of the offense, a defendant is entitled to an instruction on mistake of fact upon request. *Beggs v. State,* 597 S.W.2d 375, 378 (Tex.Crim.App. 1980); *Granger v. State,* 3 S.W.3d 36, 41 (Tex.Crim.App.1999); *Giesberg v. State,* 984 S.W.2d 245, 246 (Tex.Crim.App.1998).

 "By 'kind of culpability' is meant 'culpable mental state.'" *Beggs,* 597 S.W.2d at 378. In *Beggs,* this Court determined that Beggs was entitled to an instruction on the defense of mistake of fact if there was evidence that, through a mistake, she formed a reasonable belief about a matter of fact and her mistaken belief would negate her intent or knowledge. *Id.* The instruction on mistake of fact, therefore, applies only with respect to elements that require proof of a culpable mental state. *Id.*

Since *Beggs* was decided over 30 years ago, this Court has always applied mistake of fact to only culpable mental states. *See McQueen,* 781 S.W.2d 600; *Willis v. State,* 790 S.W.2d 307, 314 (Tex.Crim.App.1990); *Miller v. State,* 815 S.W.2d 582, 585 (Tex. Crim.App.1991); *Granger,* 3 S.W.3d at 41. We respectfully disagree with the suggestion in the concurring opinion by the Honorable Judge Cochran that suggests that, in *Thompson v. State,* 236 S.W.3d 787 (Tex.Crim.App.2007), the Court expanded the *Beggs* definition for "kind of culpability" so that it would apply to elements that do not require proof of a culpable mental state. *See Beggs,* 597 S.W.2d at 378. In *Thompson,* the Court discussed the history of the mistake-of-fact instruction by examining the Model Penal Code and the proposed revised Texas Penal Code, concluding that, although these codes differ in many respects, certain elements from both codes were incorporated into our current law. *Thompson,* 236 S.W.3d at 799. Mistake of fact as defined in the Model Penal Code was applied to transferred-intent situations but rejected in other respects.[15]

---

15. The law on mistake of fact as it applies in the context of transferred intent is unaffected by this decision because of its different historical origins. In *Thompson,* the Court held that an instruction on mistake of fact is warranted when a jury may convict under a statutory provision that permits the transfer of a culpable mental state by providing that a person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different offense was committed. *Thompson v. State,* 236 S.W.3d 787, 800 (Tex.Crim.App.2007); *see also Louis v. State,* 393 S.W.3d 246 (Tex. Crim.App.2012). The mistake must be reasonable for it to constitute a circumstance that exculpates the defendant of the offense charged and the defendant would be guilty of any lesser-included offense that would be applicable if the facts were as the defendant believed. *Thompson,* 236 S.W.3d at 800. The Court determined that this portion of the current penal code stems from the Model Penal Code, which had stated, "'Although ignorance or mistake would otherwise afford a defense to the offense charged, the defense is not available if the defendant would be guilty of another offense had the situation

*Thompson* explained that the portion of the Model Penal Code that broadly permitted a mistake of fact to negate "the purpose, knowledge, belief, recklessness, or negligence required to establish a material element of the offense" and that did not require a mistake be reasonable was rejected by the drafters of the revised Texas Penal Code. *Id.* at 796. Instead, the drafters suggested a "proposed code [that] limited the mistake of fact defense to situations that negated the culpable mental state required for the offense." *Id.* at 798. Furthermore, "the drafters of the proposed penal code viewed the mistake-of-fact defense as essentially redundant of the requirement that the State prove the mental element of an offense, but they included the defense as a method of placing upon the defendant 'the burden of producing evidence' so that a mistake of fact is something 'the prosecution does not have to negate unless raised.'" *Id.* at 799. Today, we reaffirm our conclusion in *Thompson* that, in accordance with the intent of the drafters of the Texas Penal Code, an instruction on mistake of fact is limited to any culpable mental state required for the offense. *Id.* at 798.

## B. Abandoned Law Should Remain in the Distant Past

Judge Cochran primarily relies on law that is over a century old to suggest that we should abandon our precedent of the last 30 years in favor of the law as it

existed in the distant past. Her suggestion that mistake of fact should apply to additional elements beyond the defendant's culpable mental state would alter practically every offense in the Texas Penal Code in a way that has not been recognized in Texas for over 30 years. She describes her "practical test for whether a defendant is entitled to a mistake-of-fact defense" by asking, "If the facts were as the defendant mistakenly believed them, would he be innocent of the charged offense?" Under this interpretation, a jury would be instructed to acquit a defendant who had a reasonable but mistaken belief about any element in an offense, even those elements that do not require proof of a culpable mental state. Under this approach, if a defendant charged with aggravated robbery of a person 65 years of age or older produced evidence that he believed the person was 64 years of age, then the jurors would be instructed to acquit him of aggravated robbery if they believed he was reasonably mistaken as to that fact. *See id.* § 29.03. Similarly, with respect to the statute defining the offense of felony murder, which dispenses with a culpable mental state, Judge Cochran's approach would have required acquittal if a defendant had a mistaken and reasonable belief that he was not committing an act clearly dangerous to human life. *See Lomax,* 233 S.W.3d at 304 (construing Tex. Penal Code § 19.02(b)(3)). Furthermore, with respect

been as he supposed. In such case, however, the defendant's ignorance or mistake shall reduce the grade and degree of the offense of which he may be convicted to those of the offense of which he would be guilty had the situation been as he supposed.'" *Id.* at 796 (quoting Model Penal Code and Commentaries, § 2.04(1)(a) & (2), p. 267) (emphasis deleted). We have also determined that the failure to give a mistake-of-fact instruction can be harmful error in the context of a transferred-intent situation. *See Louis,* 393 S.W.3d at 254. In *Louis v. State,* we rejected the State's

argument that the failure to submit a mistake-of-fact instruction "'that merely denied the charged offense' is never harmful." *Id.* We applied the "some harm" standard and explained that the "failure to instruct the jury on the defense of mistake of fact was an impediment to [Louis's] ability to present his defense that he did not have the requisite *mens rea* to be found guilty and to argue that defense to the jury." *Id.* We also noted that the "[l]ack of the requested instruction effectively prevented [Louis] from presenting his defense...." *Id.*

to the offense of child abandonment, the Court has held that there is no culpable mental state as to the surrounding-circumstances element, but Judge Cochran's approach would require acquittal if a defendant had a mistaken and reasonable belief about the surrounding circumstances. *See Schultz v. State,* 923 S.W.2d 1, 4 (Tex. Crim.App.1996) (construing TEX. PENAL CODE § 22.041(b)). The examples are endless.

Perhaps there may be an instance in which a statute is unconstitutional as applied to a defendant because a jury is not permitted to consider his mistaken, reasonable belief about a matter, but that situation is not before us here: appellant has not challenged the constitutionality of this statute, and, as Judge Cochran agrees, these facts do not support his appellate claim pertaining to mistake of fact. *See Lambert v. California,* 355 U.S. 225, 229, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (striking down registration ordinance that did not require proof of mental state of duty-to-register element as due-process violation). It would seem improvident to abandon this Court's decades-old precedent in the present case, in which no constitutional violation has been alleged and which presents no error in the trial court's failure to include an instruction on mistake of fact. We should not abandon precedent based on non-binding dicta. *See Woolridge,* 827 S.W.2d at 905. Nothing in this case compels us to abandon the precedent of the past 30 years.

**C. Appellant Not Entitled to Mistake–of–Fact Instruction**

■ Appellant's alleged mistaken belief was that he was licensed and in good standing to practice law in Mexico. We have determined, however, that the only culpable mental state set forth in the false-lawyer statute is intent to obtain an economic benefit. *See* TEX. PENAL CODE § 38.122(a). Because that statute does not require proof of a culpable mental state as to the licensing or good-standing elements, the mistake-of-fact instruction appellant sought did not negate the kind of culpability required for the offense. *See* TEX. PENAL CODE § 8.02(a); *Granger,* 3 S.W.3d at 41; *see also Murchison v. State,* 93 S.W.3d 239, 252 (Tex.App.–Houston [14th Dist.] 2002, pet. ref'd) (appellant not entitled to mistake-of-fact instruction because his alleged mistake did not negate culpability required by statute); *Gant v. State,* 814 S.W.2d 444, 453 (Tex.App.–Austin 1991, no pet.) (same). The court of appeals did not err, therefore, in upholding the trial court's denial of appellant's requested charge. *Celis,* 354 S.W.3d at 29. We overrule appellant's second issue.

**IV. Jury Instruction On "Foreign Legal Consultant"**

In his third issue, appellant argues that the court of appeals erred in upholding the jury instruction that included "foreign legal consultant" as a definition of "good standing with the State Bar of Texas" under the false-lawyer statute. *Id.* at 31. He contends that this instruction constituted an improper comment on the weight of the evidence in violation of Texas Code of Criminal Procedure Article 36.14. *See* TEX.CODE CRIM. PROC. art. 36.14 (prohibiting judicial comments on weight of evidence). He contended that the definition should be limited to the definition of "member in good standing with the State Bar of Texas" provided in the State Bar Rules. *See* TEX. STATE BAR RULES art. 1, § 6. Disagreeing, the court of appeals observed that the definition of "foreign legal consultant" is set forth in the Rules Governing Admission to the Bar of Texas, which the court held is the definition in the State Bar Rules for "good standing" as it applied to this case. *Celis,* 354 S.W.3d at 30–31 (cit-

ing RULES GOVERNING ADMISSION TO THE BAR OF TEX. Rule XIV). We agree.

## A. Law Applicable to Jury Instructions

The trial court must give the jury a written charge "setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX.CODE CRIM. PROC. art. 36.14. We have held that, if a jury instruction is derived from the penal code, it is generally permitted because it is the applicable statute and, therefore, the "applicable law," as required by Article 36.14. *Kirsch*, 357 S.W.3d at 651.

■■■■ Unless statutorily permitted, a trial court may not comment on the weight of the evidence. *Id.* at 651–52. Non-statutory instructions, even when they are neutral and relate to statutory offenses or defenses, generally have no place in the charge. *Id.* at 652.

■■■■ More specifically, the trial court may instruct on the definition of certain terms but not others. It must instruct on statutorily defined terms as the law applicable to the case. *See* TEX.CODE CRIM. PROC. art. 36.14. By contrast, it is generally impermissible to instruct on terms not statutorily defined, and the trial court instead must permit the jury to construe them according to the rules of grammar and common usage. *See* TEX. GOV'T CODE § 311.011; *Kirsch*, 357 S.W.3d at 650. However, a trial court may define a statutorily undefined term that has an established legal definition or that has acquired a technical meaning that deviates from its meaning in common parlance. *See Medford v. State*, 13 S.W.3d 769, 771–72 (Tex.Crim.App.2000) (proper to instruct

jury on definition of "arrest" because it is "a technical term possessing a long, established history in the common law, and it would be inappropriate if jurors arbitrarily applied their personal definitions of arrest"); *see also* TEX. GOV'T CODE § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning ... shall be construed accordingly.").

Appellant correctly observes that the term "in good standing" is not defined in the false-lawyer statute. *See* TEX. PENAL CODE § 38.122. The trial court, therefore, should not have defined it in the jury charge unless it has an established legal definition or has acquired a technical meaning. *See Kirsch*, 357 S.W.3d at 650; *Medford*, 13 S.W.3d at 771–72. It has. The term "in good standing" is a technical term because it has "acquired a peculiar and appropriate meaning in the law" and may not be construed according to the traditional rules of grammar and common usage. *Medford*, 13 S.W.3d at 772. The instruction on the definition of that term, therefore, was not a comment on the weight of the evidence. *See* TEX.CODE CRIM. PROC. art. 36.14.

Appellant, however, also challenges the accuracy of the definition provided by the jury instructions. Because the false-lawyer statute does not provide a definition of that term, we must look beyond that statute to determine whether the definition included in the charge was erroneous.

## B. Instructions Properly Defined Term

■■■ The trial court's charge instructed the jurors that they could find that appellant was in good standing under the statute if they found that he was "certified to practice in Texas as a Foreign Legal Consultant by the Texas Board of Law Examiners," which it defined as "someone certi-

fied under the Rules of the Supreme Court of Texas governing admission to the Bar of Texas, and who is considered a lawyer affiliated with the Bar of Texas." Appellant contends that this was error because it exceeded the definition of "a member in good standing" set forth in the State Bar Rules and, therefore, constituted a comment on the weight of the evidence. *See* TEX. STATE BAR RULES art. 1, § 6.

The definition in the State Bar Rules defines "member in good standing" as that term applies to people who are members of the State Bar of Texas, but this definition was inapplicable because appellant never claimed to be a member of the Texas Bar. The State Bar Rules define a "member in good standing" as "someone who meets and complies with all applicable requirements of the Rules of the Supreme Court of Texas governing admission to the bar of Texas, and who is not in default of payment of dues and who is not under suspension from practice." *Id.* Because appellant does not contend that he is a member of the State Bar, the trial court correctly declined to limit its instruction to the definition of "a member in good standing."

Although appellant was not a member of the Texas Bar, he could practice law in Texas if, among other requirements, he was "in good standing with the State Bar of Texas." TEX. PENAL CODE § 38.122. In the Rules Governing Admission to the Bar of Texas, Rule XIV sets forth requirements for the practice of law in Texas by a person licensed in a foreign jurisdiction. *See* RULES GOVERNING ADMISSION TO THE BAR OF TEX. Rule XIV. That Rule indicates that the "Court may certify to practice in Texas as a legal consultant . . . a member in good standing of a recognized legal profession in a foreign country" and that such a person (1) "may render legal services in Texas in the manner and to the extent permitted by the jurisdiction in which such person is admitted to practice," and (2) is "considered a lawyer affiliated with the Bar of Texas . . . ." *Id.* at §§ 1(a), 3, 4. The Director of Eligibility and Examination for the Texas Board of Law Examiners testified that a person meeting this criteria was considered to be in good standing with the State Bar. Therefore, the instruction provided a legally correct definition of "good standing" under the Rules and, because raised by the evidence, was the law applicable to the case. *See id.;* TEX.CODE CRIM. PROC. art. 36.14.

We hold that the charge properly instructed the jury as to the "foreign legal consultant" criteria within the definition of "in good standing." In fact, because appellant claimed at trial that he believed he was licensed in Mexico and not that he believed he was licensed in Texas, this was the only way in which the jury could have found that he was "in good standing" under the statute. *See* TEX. PENAL CODE § 38.122. The court of appeals did not err, therefore, in upholding this instruction. *Celis,* 354 S.W.3d at 30–31. We overrule appellant's third issue.

## V. Conclusion

We conclude that appellant has failed to show error in the jury charge. We affirm the judgment of the court of appeals.

KELLER, PJ., filed a concurring opinion in which PRICE and KEASLER, JJ., joined.

COCHRAN, J., filed a concurring opinion in which WOMACK and JOHNSON, JJ., joined.

MEYERS and HERVEY, JJ., did not participate.

KELLER, P.J., filed a concurring opinion in which PRICE and KEASLER, JJ., joined.

I write separately to respond to Judge Cochran's contention that the mistake-of-fact defense applies to elements of an offense other than the culpable mental state. Her position conflicts with the language of the Penal Code, contradicts legislative history, and would produce a sea-change in our law.

## A. Language of the Penal Code

Mistake of fact is a defense only if the defendant's mistake "negated the kind of culpability required for the commission of the offense."[1] Judge Cochran is correct that "culpability" generally means the actor's blameworthiness for or guilt of the crime. But the mistake-of-fact defense does not say that it applies when the mistake negated general "culpability" for the commission of the offense. Rather, the defense applies when the mistake negated "the kind of culpability required" for the commission of the offense. The use of the word "required" seems pretty clearly to mean that the culpability to which the defense refers is not culpability in general but, instead, the culpable mental state "required" by the offense. And "the kind of culpability" seems to be a reference to one of the four kinds of mental states provided for by statute (intentionally, knowingly, recklessly, and with criminal negligence).

Any ambiguity in this regard is resolved when one looks to other provisions of the Penal Code that use the word "culpability." The Penal Code's general definition

section says that "element of offense" means:

(A) the forbidden conduct;

(B) the required culpability;

(C) any required result; and

(D) the negation of any exception to the offense.[2]

When the words used in the mistake-of-fact defense (culpability required) are also used to define an element of the offense (required culpability), we should conclude that the culpability to which the defense refers is the culpability that is an element of the offense, i.e., the culpable mental state required by the offense.

Moreover, the definition of "element of the offense" distinguishes the "required culpability" from the forbidden conduct and from any required result. What this means is that "required culpability" must refer to the defendant's culpable mental state, and not to his guilt of the offense as a whole.

Penal Code § 6.02 is titled "Requirement of Culpability."[3] That section is devoted exclusively to the treatment and application of culpable mental states.[4] Subsections (a) through (c) address when culpable mental states are required, and subsection (d) lists the culpable mental states from highest to lowest.[5] Then subsection (e) provides: "Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged."[6] Subsection (e) unequivocally uses the word "culpability" to mean the defendant's culpable mental state.[7]

---

1. Tex. Penal Code § 8.02(a).

2. *Id.* § 1.07(a)(22).

3. *Id.* § 6.02 (title).

4. *Id.* § 6.02, *passim.*

5. *Id.* § 6.02(a)-(c), (d). *See also id.* § 6.02(f).

6. *Id.* § 6.02(e).

7. *See Hicks v. State,* 372 S.W.3d 649, 653 & n. 4 (Tex.Crim.App.2012); *Contreras v. State,* 312 S.W.3d 566, 585 (Tex.Crim.App.2010); *Wasylina v. State,* 275 S.W.3d 908, 910 (Tex. Crim.App.2009); *id.* at 912 (Price, J., concurring).

The statutes described above were all part of the enactment of the 1974 Penal Code, and the portions relevant to the present case have not materially changed.[8] We must assume that the legislature was aware of all of these provisions when it used the phrase "the kind of culpability required" in the mistake-of-fact defense.[9] Given the legislature's use of the term "culpability" in §§ 1.07 and 6.02 to describe culpable mental states that are required, we should conclude that the legislature intended the same meaning for the term "culpability" in the mistake-of-fact statute.

Prior cases from our Court have construed the mistake-of-fact defense to apply only if the mistake negated the culpable mental state.[10] It is true that these cases were decided before our statutory construction decision in *Boykin*,[11] but the conclusions in those cases are consistent with the plain meaning of the text of the statute.[12] For that reason, we do not need to consider the legislative history of the statute. However, because Judge Cochran does so, and in the event the reader believes the statute is ambiguous, I will do so as well.

**B. Legislative History**

Judge Cochran candidly acknowledges that the Practice Commentary to § 8.02 contradicts her position. The Practice Commentary states: "Mistake of fact constitutes a defense only if it negates the culpable mental state. Thus, Subsection (a) overturns the line of cases recognizing mistake of fact as a defense to public welfare offenses that impose strict liability."[13] In *Thompson*, we said that the Practice Commentary "is often helpful because it was drafted by two individuals who were part of the Penal Code revision project."[14] Nevertheless, in that case, we did not find it instructive in construing the mistake-of-fact statute because the enacted

---

**8.** *See* Tex. Penal Code §§ 1.07(13), 6.02, 8.02(a) (1974).

**9.** *See Smith v. State*, 309 S.W.3d 10, 14 (Tex. Crim.App.2010) ("Since the Legislature modified Article 21.15 as part of the same legislation that enacted the 1974 Penal Code, it must have been aware of the terms of Section 6.03(c) of the Penal Code and intended for Article 21.15 to be given effect.").

**10.** *See McQueen v. State*, 781 S.W.2d 600, 602 n. 2, 603 (Tex.Crim.App.1989); *Beggs v. State*, 597 S.W.2d 375, 378 (Tex.Crim.App.1980).

**11.** *See Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex.Crim.App.1991).

**12.** *See id.*

**13.** Seth S. Searcy, III & James R. Patterson, V.A.P.C., § 8.02, *Practice Commentary*, Vol. 1, p. 212 (first paragraph) (1974). *See also id.* at p. 213 (first full paragraph) ("Section 8.02, however, clearly specifies that mistake of fact exculpates only if it negates the culpable mental state.").

**14.** *Thompson v. State*, 236 S.W.3d 787, 798 (Tex.Crim.App.2007). I disagree with Judge Cochran's implication that the practice commentary may be disregarded because it "was written by a practitioner, not any court or legislator, and it was written for the 1970 Proposed Penal Code, not the provision that was actually enacted in 1974." First, Seth Searcy, who was responsible for the commentary that applied to § 8.02, was not just any practitioner: he was the second director of the Penal Code revision project. *See* Seth R. Searcy, III, V.A.P.C., Foreword, Vol. 1, p. XXV (1974) ("prepared the commentary for the sections in Titles 1, 2, 5, 9, and Chapter 47 of Title 10"); T. Gilbert Sharpe, V.A.P.C., Introduction, Vol. 1, p. VII (1974) (describing Searcy's role in the project). Second, the Practice Commentaries were commentaries on the 1974 Penal Code, though they were built upon the earlier committee comments to the proposed code and were sometimes identical. Searcy, Foreword, at XXIV–XXV.

statute differed significantly from the one proposed by the drafting committee.[15]

But we observed that "the mistake of fact defense appears to incorporate elements from both the Model Penal Code [upon which the proposed code was based] and the prior version of the Texas Penal Code,"[16] thereby suggesting that the new mistake-of-fact defense was not simply a codification of the prior law but was, instead, a mixture of prior law and new law. Although we found the Practice Commentary's global comment about the mistake-of-fact statute being a redundant provision[17] to be unhelpful because of the significant differences between the proposed and enacted versions of relevant statutes,[18] the Practice Commentary comment at issue in the present case pertains to only a portion of the mistake-of-fact statute. That portion of the statute—requiring that the defendant's mistake negate "the kind of culpability required" for the offense— was clearly derived from the language of the proposed code and is dissimilar to the language of the prior statute.[19]

The relevant difference between the "culpability" language in the current mistake-of-fact statute and its counterpart in the proposed code is that the proposed code specified the culpable mental states to be negated ("intent, knowledge, recklessness, or criminal negligence").[20] This difference can be explained by the fact that the Penal Code's Chapter 8 defenses (including mistake of fact) also applied to offenses outside the Penal Code,[21] and those other offenses sometimes used culpable mental states other than those specified in the Penal Code (e.g. wilfully).[22] Rather than try to catalog all possible "nonstandard" culpable mental states, the legislature sensibly took a global approach to negating culpability.

**15.** *Thompson*, 236 S.W.3d at 799.

**16.** *Id.*

**17.** *Id.* ("The drafters of the proposed penal code viewed the mistake of fact defense as essentially redundant of the requirement that the State prove the mental element of an offense, but they included the defense as a method of placing upon the defendant 'the burden of producing evidence' so that a mistake of fact is something 'the prosecution does not have to negate unless raised.' That view was maintained in the practice commentary to the current provision.").

**18.** The transferred-intent statute in the enacted code was entirely different from the version in the proposed code, and the mistake-of-fact statute in the enacted code contained a reasonableness requirement not contained in the proposed code's version. *See id.* at 797–99. The reasonableness requirement was the only element of the mistake-of-fact statute that we identified as being derived from prior law. *Id.* at 794.

**19.** *Compare* Tex. Penal Code § 8.02 (*the current statute*) ("if his mistaken belief negated the kind of culpability required for the commission of the offense") *to* State Bar Committee on Revision of the Penal Code, TEXAS PENAL CODE: A Proposed Revision, Final Draft, § 8.02(a)(October 1970) (*the proposed code*) ("if his ignorance or mistake negated the intent, knowledge, recklessness, or criminal negligence required to establish an element of the offense charged") *and* Tex. Penal Code, Art. 41 (1948) (*the prior statute*) ("the person so acting under a mistake would have been excusable had his conjecture as to the fact been correct").

**20.** *See* previous footnote.

**21.** Tex Penal Code § 1.03(b) ("The provisions of Titles 1, 2, and 3 apply to offenses defined by other law...."); *cf. State v. Colyandro*, 233 S.W.3d 870 (Tex.Crim.App.2007) (conspiracy statute does not apply to offenses outside of the Penal Code because it is contained in Title 4 and only Titles 1, 2, and 3 apply to offenses outside the Penal Code).

**22.** *See, e.g.*, Tex. Agric. Code § 71.058(a) (wilfully or negligently); Tex Bus. & Com.Code § 17.11(b), (c) (wilfully); Tex Family Code § 162.206 (wilfully).

Judge Cochran contends that the question is whether Texas abandoned "its tried and true approach" to the mistake of fact defense that existed from 1867 until 1974 by rendering the statutory defense a virtual nullity. The first answer to her question is that the framers of the 1974 Penal Code were heavily influenced by the Model Penal Code and more modern legal developments and could well have intended to break with the past. The second answer is that, after *Thompson*, the mistake-of-fact defense's role in negating the transfer of intent gives it a non-redundant application.

### C. Prior Caselaw

Judge Cochran relies upon the *Mose Green* case [23] and other pre–1974 cases to support the proposition that the mistake-of-fact defense has historically been applied even when the mistake did not negate a culpable mental state required for the offense. But as the above discussion shows, those cases were decided under a mistake-of-fact statute that differs materially from the current statute.[24]

In cases decided since the enactment of the new statute in 1974, the Court has said that the mistake must negate a culpable mental state required for the charged offense.[25] And at least two cases from this Court since the 1974 enactment have held the mistake-of-fact defense to be inapplicable when the mistake was about an element of the offense for which there was no culpable mental state.[26]

In *Billy Ray Green v. State*, the defendant was charged with public lewdness, occurring in a booth in an adult bookstore.[27] The defendant contended that he was entitled to the defense of mistake of fact because there was evidence that he was mistaken about whether the booth was a public place.[28] We held that he was not entitled to the defense because "[e]ven if [the defendant] did form, through mistake, a belief that the booth was not a public place, such mistake of fact could not be a defense since there is no requirement that a defendant know that the location where the act was performed was a public place." [29]

In *Mays v. State*, the defendant was charged with capital murder for killing peace officers.[30] He contended that he was entitled to a mistake-of-fact defense on the basis that he was mistaken about whether the officers were acting in the discharge of their official duties.[31] Although the offense of capital murder by killing a peace officer includes the element that the peace officer was "acting in the lawful discharge of an official duty," [32] we held that the defendant was not entitled to

23. *Green v. State*, 153 Tex.Crim. 442, 221 S.W.2d 612 (1949). I include the first name in my reference to the case because there is another important *Green* case that I will address below.

24. *See* this opinion, footnote 19. *See also* TEX PENAL CODE, Art. 41 (1925) (essentially same language as 1948 statute); TEX. PENAL CODE, Arts. 46, 47 (1895, 1911) (same); TEX. PENAL CODE, Arts. 45, 46 (1879) (same).

25. *See, e.g., Willis v. State*, 790 S.W.2d 307, 314 (Tex.Crim.App.1990); *McQueen*, 781 S.W.2d at 602 n. 2, 603; *Beggs*, 597 S.W.2d at 378. *See also Posey v. State*, 966 S.W.2d 57, 70 (Womack, J., dissenting).

26. *Mays v. State*, 318 S.W.3d 368, 383–84 (Tex.Crim.App.2010); *Green v. State*, 566 S.W.2d 578, 584 (Tex.Crim.App.1978).

27. 566 S.W.2d at 580–81.

28. *Id.* at 584.

29. *Id.*

30. 318 S.W.3d at 382.

31. *Id.*

32. *Id.* at 384; TEX. PENAL CODE § 19.03(a)(1).

a mistake of fact defense because, among other things, "the defendant need not know that specific fact," and so, the mistake "would not negate the required culpability for capital murder." [33]

Judge Cochran's position conflicts with our prior pronouncements in earlier cases and conflicts specifically with the holdings in *Billy Ray Green* and *Mays*. She relies heavily upon *Thompson,* but *Thompson's* holding with respect to the mistake-of-fact defense is entirely consistent with the conclusion that the defense applies only if the mistake negates the culpable mental state required for the offense. When the State seeks to transfer a culpable mental state from one offense to another, the mistake-of-fact defense may be available to negate the culpable mental state for the unintended, transferee offense.[34] Judge Cochran recites *Thompson's* "three important observations" about the prior mistake-of-fact statute, which included the first observation that the mistake did not have to negate the culpable mental state required for the offense, but of the three observations, we identified only the second—involving the reasonableness requirement—as being carried forward from prior law.[35] Judge Cochran criticizes *McQueen* as relying erroneously upon the Practice Commentary in arriving at its conclusion that a culpable mental state must attach to the "without the effective consent" element of the offense of unauthorized use of a motor vehi-

cle, but *McQueen's* holding appears to rest on considerations independent of the mistake-of-fact defense, as the opinion relied heavily upon *McClain v. State,*[36] a case that construed the theft statute[37] and which did not involve an issue regarding mistake of fact.[38]

Judge Cochran gives some examples of offenses to which she believes the mistake-of-fact defense should apply, but in most, if not all, of those cases, a culpable mental state attaches to the element about which a mistake might be made. For instance, Dangerous Dan goes moose hunting but shoots a person by mistake and, under Judge Cochran's theory of mistake-of-fact, he is not guilty of murder.[39] But in an intentional and knowing murder, the State would already have to prove that the defendant intended or knew that the being he killed was "an individual," elsewhere defined as "a human being who is alive."[40] A failure to prove intentional or knowing killing of an individual would already exculpate Dan from murder, without regard to mistake of fact.

Judge Cochran cites theft as a classic example of the application of mistake of fact to an element—without consent—to which a culpable mental state does not attach, but under *McClain,* the required culpable mental state includes the owner's lack of consent.[41] She cites *Hill v. State,*[42] a prosecution for intentionally dispensing

33. *Mays,* 318 S.W.3d at 384.

34. *See Thompson,* 236 S.W.3d at 800.

35. *Id.* at 794.

36. 687 S.W.2d 350 (Tex.Crim.App.1985).

37. *See McQueen,* 781 S.W.2d at 604.

38. *See McClain, passim.*

39. But under Judge Cochran's reasoning if Dan acted unreasonably—if he failed to exercise reasonable care in determining whether

the being shot was a person or an animal—he would be liable for murder (instead of simple negligence) because mistake of fact exculpates defendants only if their mistakes are reasonable.

40. *See* Tex. Penal Code § 19.02(b)(1); § 1.07(26).

41. *McClain,* 687 S.W.2d at 354–55.

42. 765 S.W.2d 794 (Tex.Crim.App.1989).

a controlled substance without a valid medical purpose, as involving an example of when mistake of fact could apply to an element—without a valid medical purpose—that was not embraced by a culpable mental state. The opinion in *Hill* does not supply the text of the controlled substances statute at issue,[43] but my research suggests that the statute is structured in such a way that the culpable mental state applies to both the dispensing and the absence of a valid medical purpose.[44] Moreover, *Hill* quotes the portion of the Practice Commentary stating that mistake of fact "constitutes a defense only if it negates the culpable mental state"[45] and nothing in *Hill* suggests that it was following a contrary rule.[46] Judge Cochran suggests her reasoning would apply to possession of controlled substances, but in a controlled-substances prosecution, the State is required to prove that the accused knew that the matter was contraband.[47]

Judge Cochran acknowledges that her rule would cause the mistake-of-fact defense to apply to strict liability, public welfare offenses. In essence, her view would eliminate strict liability offenses in Texas except where a statute explicitly provides that mistake of fact is not a defense. Her view would also eliminate strict liability elements within other offenses, many of which were created long after this Court had construed the mistake-of-fact defense as applying only when the mistake negates the culpable mental state. For example, for capital murders of children under age six,[48] we have held that there is no requirement that the defendant know or intend that his victim be under six years of age.[49] But under Judge Cochran's view, a defendant might claim that he reasonably, but mistakenly, believed that the child was seven years old. It appears also that she would overrule *Mays* and allow a capital-murder defendant to attempt to show that he was reasonably mistaken about whether a police officer was acting in the lawful discharge of an official duty. Untold numbers of offenses would be affected by her view.

And if we adopted not just Judge Cochran's rule, but the entirety of her reasoning, defendants would be adversely affected in ways that the legislature never anticipated. A hunting accident that, until now, would have been considered at most to be criminally negligent homicide or manslaughter would become murder if the defendant honestly, but unreasonably, thought he was shooting a deer instead of

---

**43.** *See Hill, passim.*

**44.** *See Ford v. State,* 676 S.W.2d 609, 610 (Tex.App.–Beaumont 1984), quoting from what appear to be a prior version of the referenced statutes:

[3.08(g)] A practitioner, as defined by Section 1.02(24)(A) of this Act, may not prescribe, dispense, deliver, or administer a controlled substance or cause a controlled substance to be administered under his direction and supervision except for a valid medical purpose and in the course of professional practice.

\*　\*　\*

[4.08(a)(1)] It is unlawful for any person:
(1) who is a practitioner knowingly or intentionally to distribute or dispense a controlled substance in violation of Section 3.08.

*See also* the current statutes with similar language: Tex. Health & Safety Code §§ 481.071(a), 481.128.

**45.** 765 S.W.2d at 795 n. 2

**46.** *Id., passim.*

**47.** *Ex parte Lane,* 303 S.W.3d 702, 709 (Tex. Crim.App.2009); *Poindexter v. State,* 153 S.W.3d 402, 405 (Tex.Crim.App.2005).

**48.** *See* Tex. Penal Code § 19.03(a)(8).

**49.** *Black v. State,* 26 S.W.3d 895, 897 (Tex. Crim.App.2000).

a person. The sweep of the theft statute would be substantially broadened to encompass those who honestly believed that they had consent to take property but whose beliefs were determined to be unreasonable. Controlled-substance convictions could be had against persons who honestly, but unreasonably, believed that they were in possession of something innocuous. In short, Judge Cochran's view would produce a sea-change in the criminal law.

The "interests of *stare decisis* are at their height for judicial constructions of legislative enactments upon which the parties rely for guidance in conforming to those enactments." [50] Furthermore, when a judicial construction of a statute "is long-standing, there is some force to the argument that, if the Legislature did not agree with the judicial interpretation, it would have acted to change the statute." [51] We should not change our construction of a statute to produce the dramatic, far-reaching change in the law that would occur here without being certain that our prior construction of the statute was incorrect. Given the language of various provisions in the Penal Code, the Practice Commentary, and the history of the mistake-of-fact provision, I do not believe our prior construction has been shown to be incorrect.

With these comments, I join the Court's opinion.

COCHRAN, J., filed a concurring opinion, which WOMACK, and JOHNSON, JJ., joined.

I agree that the offense of falsely holding oneself out as a lawyer contains only one culpable mental state, the intent to obtain an economic benefit.[1] I also agree that the trial judge did not err by instructing the jury on the definition of "foreign legal consultant." But I do, however, respectfully disagree with the plurality that appellant "was not entitled to an instruction on a mistake-of-fact defense because his requested instruction did not negate the culpability required for the offense." [2] If appellant had offered evidence that he reasonably, but mistakenly, believed that he was authorized to practice law in Texas, he would have been entitled to a mistake-of-fact instruction because that mistaken belief would negate the kind of culpability required for the offense.[3]

I believe that the plurality mistakenly equates the phrase "negates the kind of culpability required for the offense" with the phrase "negates the culpable mental state." The Legislature knew the difference between those two concepts and carefully chose its phrasing in defining the mistake-of-fact defense in the 1974 Penal Code.[4] We should not rewrite the words of

**50.** *Jones v. State,* 323 S.W.3d 885, 889 (Tex. Crim.App.2010).

**51.** *Id.* at 888.

**1.** TEX. PENAL CODE § 38.122(a) ("A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person holds himself or herself out as a lawyer, unless he or she is currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed.").

**2.** Plurality op. at 1–2.

**3.** *See* TEX. PENAL CODE § 8.02(a) ("It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.").

**4.** The term "culpability" is broader than the term "culpable mental state" and refers to the general "blameworthiness" or "guilt" of the actor. *See Evans v. Michigan,* —— U.S. ——, 133 S.Ct. 1069, 1077, 185 L.Ed.2d 124 (2013) (distinguishing between "elements" of an of-

the statute to eviscerate the defense of mistake of fact. But because appellant failed to offer evidence to support each aspect of his mistake-of-fact defense, I agree that the trial judge properly denied a jury instruction on that defense. I concur in the judgment.

## I.

Appellant was charged with 23 counts of falsely holding himself out as a lawyer. The evidence at trial showed that appellant was an investigator for a personal-injury attorney in Corpus Christi. After having expressed his desire to become a lawyer for several years, he hung a framed "license" on his office wall one day in 2000. Appellant claimed to have received his "license" after graduating from Universidad Regiomontana in Monterrey, Mexico, in 1999. This was while he was working full-time as an investigator in Corpus Christi.[5] In 2001, appellant left his investigator job and joined the law firm of Owen & Associates. That firm specialized in recruiting personal-injury clients and referring them to other lawyers for a percentage of the attorney's fees. While he worked at that firm, appellant made numerous representations to clients, office staff, and other attorneys that he was an attorney licensed to practice law in Mexico.

In 2005, appellant formed CGT Law Group International[6] and he repeatedly claimed to be a licensed attorney in Mexico.[7] During a civil lawsuit to recover attorney's fees in Zapata County, appellant admitted that he did not have a license or "cedula" to practice law in Mexico. He was unable to produce documentation of any law license or law degree.

The evidence at trial showed that appellant was not a lawyer, had never been a lawyer in either Mexico or the United States, had not attended law school, and was not licensed as a lawyer in either Mexico or the United States. Appellant's civil-lawsuit testimony established that appellant did not have a United States law license or a Mexican "cedula,"[8] but appel-

---

fense and criminal culpability; "Culpability (i.e. the 'ultimate question of guilt or innocence') is the touchstone" for purposes of an acquittal); *United States v. Scott*, 437 U.S. 82, 98, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (distinguishing between judicial determinations that go to "the criminal defendant's lack of culpability" and relate to "the ultimate question of guilt or innocence" and those that deal with procedural error); BLACK'S LAW DICTIONARY 406 ("culpability" is "Blameworthiness; the quality of being culpable"; second definition refers to Model Penal Code § 2.02); WEBSTER'S UNABRIDGED DICTIONARY 443 (2d ed.) ("culpability" means "blamableness; liability to blame").

5. Gabriel Cavazos, a law-school professor in Monterrey, testified that it would be impossible to work full time in Corpus Christi and simultaneously obtain a law degree in Mexico.

6. "CGT" stands for Celis, Gwyther, and Talapia, the three people who formed the partnership.

7. For example, appellant's CGT business cards stated that he was an attorney licensed in Mexico, as did the Owen & Associates business cards. The website for CGT noted, in appellant's biographical section, that he was a licensed attorney in Mexico. Appellant told various clients, including Paloma Steele, that he was a licensed attorney in Mexico. In the CGT professional-liability insurance application, appellant stated that he was licensed in Mexico, admitted to the bar in 2000, and was a member in good standing with the Mexican Bar Association.

8. According to trial testimony, the Texas Board of Law Examiners requires attorneys from Mexico to produce (1) a "cedula" as evidence of that person's ability to practice law in Mexico, and (2) a certificate from Mexico's Ministry of Education stating that the person is currently meeting the requirements to be an attorney in Mexico. Appellant never produced either of these documents. Even with those documents, a person could only advise clients about the laws of Mexico

lant stated that "I'm considered a lawyer in Mexico" because he has a diploma in "judicial sciences"[9] even though it has never been registered with the Ministry of Education, which is a prerequisite for obtaining a "cedula" to practice law.[10] It was undisputed that appellant was not in good standing with either the Texas State Bar or the Mexican licensing authority. The evidence also showed that, during 2006 alone, appellant received over $1.3 million in attorney's fees while at Owens & Associates.

The jury convicted appellant of fourteen counts of falsely holding himself out as a lawyer and sentenced him to ten years' probation and a $10,000 fine on each count.

The court of appeals rejected appellant's eighteen points of error, including three issues related to the jury charge, and affirmed the trial court's judgment.[11] The court of appeals rejected appellant's claim that he was entitled to an instruction on mistake of law because

> [a]ppellant's alleged belief that he was licensed to practice law in Mexico and in good standing with the licensing authority in Mexico does not negate the culpable mental state to commit the offense. Therefore, appellant was not entitled to a mistake of fact instruction regarding his belief that he was licensed to prac-

tice law in Mexico and in good standing with the licensing authority in Mexico.[12] According to that court, a person who has taken all reasonable steps to ensure compliance with the legal attorney-licensing requirements and who reasonably believes that he is authorized to practice law in Texas is nonetheless subject to significant criminal punishment even though his mistaken belief negates the kind of culpability required for the offense and he is morally blameless. This cannot be. And it is not a correct interpretation of the law.

## II.

### A. The Origins of the Mistake–of–Fact Defense.

The history of the Texas mistake-of-fact provision was summarized by Presiding Judge Keller in *Thompson v. State*.[13] She noted that, before enactment of the 1974 Code, the mistake-of-fact defense was codified in Article 41 of the 1948 Penal Code. That provision read as follows:

> If a person laboring under a mistake as to a particular fact shall do an act which would otherwise be criminal he is guilty of no offense, but the mistake of fact which will excuse must be such that the person so acting under a mistake would have been excusable had his conjecture as to the fact been correct, and it must also be such a mistake as does not arise

---

as a "foreign legal consultant"; he could not practice personal-injury law in Texas.

9. Despite promises to do so, appellant never produced any diploma or other certificate stating that he had completed a course of legal study at the Universidad Regiomontana.

10. Appellant called two witnesses to testify about requirements to practice law in Mexico. One of them, an attorney in appellant's law firm, said that it is not necessary to go to law school or obtain a law license to practice law in Mexico. "Anybody who goes and wants to practice in the four areas of amparo, employ-

ment law, agrarian law, and criminal law can do that. Anybody here can do that. And they can go to Mexico and do that." When the prosecutor asked the witness if "every single Mexican citizen is licensed to practice law?" the witness responded, "As long as they're not liars and they're not mentally incompetent."

11. *Celis v. State*, 354 S.W.3d 7 (Tex.App.– Corpus Christi 2011).

12. *Id.* at 29.

13. 236 S.W.3d 787, 793–800 (Tex.Crim.App. 2007).

from a want of proper care on the part of the person so acting.[14]

This statute (or its predecessor, Article 45[15]) defined and governed the mistake-of-fact defense in Texas for almost 100 years. The statutory defense applied to virtually all offenses and could be applied to any "particular fact" if a mistake about that fact would excuse the actor "had his conjecture as to the fact been correct[.]" It was applicable to a wide variety of facts that included the following

- Whether the defendant reasonably believed that the timber he "carried away" belonged to Mr. X who authorized the defendant to take it, or Mr. Y who claimed ownership of the land on which the timber had grown;[16]

- Whether the defendant reasonably believed that he did not know it was an election day in a prosecution for keeping his saloon open on election day;[17]

- Whether the defendant, on trial for bigamy, reasonably believed that his first wife was dead before he married his second wife;[18]

- Whether the defendant, on trial for kidnapping and abducting a female minor for the purpose of prostitution, reasonably believed that the girl was over 17 and went with him voluntarily;[19]

- Whether the defendant, in a negligent homicide prosecution, reasonably believed that "he had taken the cartridges from the gun, as was always his custom under such circumstances";[20]

- Whether the defendant reasonably believed that the liquor that he sold was not intoxicating;[21]

- Whether the defendant reasonably believed that the scales he used to weigh cotton were accurate rather than being a false weighing device;[22]

- Whether defendant, charged with violating the Pure Food Law by selling adulterated food, reasonably believed that the cans he had for sale were not in a bad condition;[23] and

- Whether the defendant meat seller reasonably believed that the meat he

14. TEX. PENAL CODE art. 41 (1948).

15. In 1882, Articles 45 & 46 of the Texas Penal Code read as follows:

Art. 45. No mistake of law excuses one committing an offense; but if a person laboring under a mistake as to a particular fact shall do an act which would otherwise be criminal, he is guilty of no offense.

Art. 46. The mistake as to fact which will excuse, under the preceding article, must be such that the person so acting under a mistake would have been excusable had his conjecture as to the fact been correct; and it must also be such mistake as does not arise from a want of proper care on the part of the person committing the offense.

16. *Lackey v. State*, 14 Tex.App. 164, 1883 WL 8888, *1 (1883); *see also Donahoe v. State*, 23 Tex.App. 457, 458, 5 S.W. 245 (1887) (taking property belonging to another under a mistaken belief that it belongs to a third person, who has authorized the taker to remove similar property belonging to him, is not theft).

17. *Hailes v. State*, 15 Tex.App. 93, 1883 WL 8985, *1 (1883).

18. *Watson v. State*, 13 Tex.App. 76, 1882 WL 9325, *4 (1882).

19. *Mason v. State*, 29 Tex.App. 24, 14 S.W. 71, 71 (1890).

20. *McCray v. State*, 63 Tex.Crim. 522, 140 S.W. 442, 443 (1911).

21. *Joyce v. State*, 56 Tex.Crim. 333, 120 S.W. 453, 455 (1909).

22. *Smith v. State*, 135 Tex.Crim. 488, 121 S.W.2d 347, 347–48 (1938).

23. *Keeton v. State*, 142 Tex.Crim. 141, 151 S.W.2d 819 (1941).

sold did not contain forbidden sulphites.[24]

There were two distinct situations in which no instruction on a reasonable mistake of fact instruction was given to the jury: (1) when the mistake went to the felonious intent—the culpable mental state; in that situation *any* honest mistake, even a stupid one, was sufficient to exonerate the defendant;[25] and (2) when the defendant was charged with statutory rape; in that situation, Texas, like the majority of states, concluded that even a reasonable mistake about the minor's age would not exculpate a defendant because an underage girl was legally incapable of consenting to an intimate act.[26]

In *Thompson,* we made "three important observations" about this statutory defense:

- "First, the mistake did not have to negate the culpable mental state required for the offense; all that had to be shown was that no offense would have been committed if the mistaken belief had been correct." [27] Thus, the

24. *Neill v. State,* 225 S.W.2d 829, 830 (Tex. Crim.App.1950) ("Under the express provisions of Art. 709, P.C., the sale of an article of food containing sulphite is made unlawful. Neither knowledge nor intent is a part of that offense. Lack of knowledge on the part of the accused that the article of food contained sulphite arises only as a matter of defense under the general statute relating to the defense of mistake of fact.").

25. *Neely v. State,* 8 Tex.App. 64, 1880 WL 8970, *1–2 (1880) (quoting the Texas Supreme Court's discussion in *Bray v. State,* 41 Tex. 203, 204 (Tex.1874), to the effect that the statutory provisions of mistake of fact and its "want of proper care" limitation applies only "to acts 'otherwise criminal,' or acts in themselves criminal if unexcused, and not to acts which become criminal only when committed with a fraudulent or felonious intent"; jury instructions that required a finding of "proper care" when defendant claimed that he had a "good faith" belief that the cow he killed he had bought from Mr. X, when, in fact, it belong to Mr. Y); *see also Brown v. State,* 43 Tex. 478, 1875 WL 7577, *2 (Tex.1875), a case in which the defendant was convicted of falsely holding himself out as a notary public, in which the Texas Supreme court explained,

> It was not the intention of the law to punish one who honestly believed himself entitled to the office in which he assumed to act. The language of the statute, "falsely assume or pretend," implies a guilty knowledge. The ordinary test of criminality is the criminal intent or guilty knowledge; and in this case we think the statute makes such intent or knowledge an essential constituent of the offense. The provisions of the code as to

mistake do not apply to offenses of this character. (*See Buck Bray v. The State,* 41 Tex. 203.).

*Id.* at *2 (some citations omitted). Thus, if the statute required an intentional or knowing mental state concerning the element about which the defendant was mistaken, any mistake, not merely a reasonable mistake, negated that culpable mental state and exculpated the defendant.

26. *Robertson v. State,* 51 Tex.Crim. 493, 102 S.W. 1130, 1131 (1907) ("Under the decisions in this state, a person accused of rape on a girl under 15 years of age cannot justify his act by proof that he believed the girl was over 15 years of age. The decisions in Texas are uniform on this proposition."); *see generally United States v. Ransom,* 942 F.2d 775, 776 (10th Cir.1991) ("The history of the offense of statutory rape indicates that from ancient times the law has afforded special protection to those deemed too young to understand the consequences of their actions. The more prevalent view seems to be that these statutory provisions did not require the prosecution to show that a defendant believed the victim to be under the lawful age of consent and that no defense was allowed for a reasonable mistake of age."). Texas has always followed this view, despite the fact that it was never the view of the English common law which did exonerate a statutory rape defendant who made a reasonable mistake of the girl's age. *See* Myers, *Reasonable Mistake of Age,* 64 Mich. L.Rev. 105, 110 (1965) ("Reasonable mistake of age has never been denied as a defense in an English statutory rape case.").

27. 236 S.W.3d at 794.

mistaken fact merely had to negate the general culpability or blameworthiness of the conduct, and the mistake could relate to any element of the offense.

- "Second, the defense contained a requirement that the mistake 'not arise from a want of proper care,' which is roughly equivalent to the current statutory requirement that the defendant's mistaken belief be 'reasonable.'"[28] Then, as now, the jury generally decided whether a given mistake was "reasonable" or "did not arise from a want of proper care."[29]

- "Third, the defense did not specify that a mistake could result in liability for a lesser-included offense; rather, the statutory language suggested that the defense applied only when the mistake would completely exonerate the defendant of any offense."[30] But

the defense did apply if the defendant would not be guilty of any offense if his reasonable belief had been correct.

We noted that the distinction between mistakes that relate to the culpable mental state (for which no instruction is necessary and for which the defendant need not show his mistake was a reasonable one)[31] and mistakes that relate to other facts or elements (for which an instruction is necessary and for which the defendant must show that his mistake was a reasonable one) was discussed in the 1949 case of *Green v. State.*[32]

In *Green,* the defendant was charged with stealing hogs; his defense was that he thought that he owned the hogs. The defendant was entitled to an acquittal if he honestly believed he had a claim of right to the hogs, even if that was an unreasonable belief, because it rebutted any intent to steal.[33] Thus, a mistake of fact that rebut-

28. *Id.*

29. *Id.* Sometimes a mistake-of-fact instruction would not be submitted to the jury: (1) when that mistake is unreasonable as a matter of law (*see Mays v. State,* 318 S.W.3d 368, 383 (Tex.Crim.App.2010) ("although the general rule is that the jury must determine the relative credibility of the evidence raising a 'reasonable belief' about a fact, reliance upon paranoid beliefs and delusions negates the type of reasonableness that an ordinary and prudent person would have under the circumstances")); and (2) when there is no evidence in the record that would support a finding that the mistake was a reasonable one (*See Hill v. State,* 765 S.W.2d 794, 795–97 (Tex.Crim.App.1989) (noting that Section 2.03 of the Penal Code requires the defendant to produce evidence supporting a defense, and concluding that the defendant "was entitled to have the jury instructed on the defense of mistake of fact if there was some evidence before the jury that through mistake he formed a reasonable belief about a matter of fact and his belief negated the culpability essential to the State's case."); *see generally*

Shaw v. State, 243 S.W.3d 647, 657–58 (Tex. Crim.App.2007)).

30. *Thompson,* 236 S.W.3d at 794.

31. *See id.* at 796–97 (explaining that, under the Model Penal Code, a mistake need not be "reasonable" and no special jury instruction need be given because the ignorance or mistake simply negates a required culpable mental state; "The Model Penal Code commentary viewed 'mistake of fact' as being a mere evidentiary issue"); *see also* 1 Paul H. Robinson, Criminal Law Defenses § 62(d), at 262 (1984) (noting that the Model Penal Code "does not provide a general mistake of fact defense but simply states the obvious: If a culpable state of mind is required by an offense definition and cannot be proven because of the defendant's ignorance or mistake, then the defendant cannot be convicted of the offense.").

32. 153 Tex.Crim. 442, 221 S.W.2d 612 (1949) (op. on reh'g).

33. *Id.* at 616.

ted the culpable *mens rea* (1) did not require any mistake-of-fact instruction, and (2) did not need to be reasonable or "arise from a want of proper care." As we stated in *Thompson,* the *Green* Court held that "a finding of proper care was not required when intent was an element of the offense and the mistake negated that intent." [34] We noted that *Green* "emphasized that the rule that the jury should not be instructed on the 'proper care' element of mistake of fact applied 'only to those crimes where the unlawful intent is an essential element without which the offense does not arise.' " [35] *Green* clearly explained that if the mistake of fact directly rebuts the *mens rea,* no instruction on mistake of fact is necessary. Therefore, it was error to instruct the jury that Green's mistake concerning ownership of the hogs had to be reasonable." [36]

The lesson from *Green* is that an honest mistake that negates the statutory culpable *mens rea* need not be reasonable, but an honest mistake that concerns a different element of the offense, such as the surrounding circumstances, must be reasonable. That distinction in *Green* is the basis for the defense of mistake of fact under Section 8.02, which deals solely with "reasonable" mistakes about elements other than the culpable mental state.

## B. The Model Penal Code Mistake–of–Fact Provision Contrasted to the Texas Provision.

In *Thompson,* we also contrasted the Model Penal Code provision concerning the mistake-of-fact defense to the corresponding Texas statute. We noted that the 1970 Proposed Texas Penal Code followed the Model Code provision and did not require the mistake to be a reasonable one.[37] Under the proposed code, the mistake-of-fact defense read:

> It is a defense to prosecution that the actor was honestly ignorant or mistaken about a matter of fact or law if his ignorance or mistake negated the intent, knowledge, recklessness, or criminal negligence required to establish an element of the offense charged.[38]

We noted that the drafters of the proposed code "viewed the mistake of fact defense as essentially redundant of the requirement that the State prove the mental element of an offense, but they included the defense as a method of placing upon the defendant 'the burden of producing evidence' so that a mistake of fact is something 'the prosecution does not have to negate unless raised.' " [39]

Mistake of fact was redundant in the 1970 draft because, under the Model Penal Code and the 1970 proposed Texas Code, a culpable mental state attached to every

---

34. *Thompson,* 236 S.W.3d at 794.

35. *Id.* at 795; *see also* ROBINSON, *supra* note 31, at 262.

36. 221 S.W.2d at 616 (concluding that the defendant need not show that his mistake depended upon reasonable diligence because "[a]n intent to steal property and a bona fide claim of right to take it are incompatible. One who takes property in good faith, under fair color of claim or title, honestly believing that he is its owner and has a right to its possession or that he has a right to take it, is not guilty of larceny even though he is mis-

taken in such belief, since in such case the felonious intent is lacking"; because defendant's mistake negated the essential element of "intent to steal," jury should not have been instructed that it could acquit only if defendant's mistaken claim of ownership was reasonable as well as in good faith) (internal quotation marks omitted).

37. 236 S.W.3d at 798.

38. STATE BAR COMM'N, 1970 PROPOSED PENAL CODE § 8.02(a).

39. *Thompson,* 236 S.W.3d at 799.

essential element of the offense. As the Practice Commentary to the 1974 Penal Code notes,

> The 1970 proposed code contained a section 6.06 providing that "if the definition of an offense prescribes a culpable mental state but does not specify the conduct, circumstances surrounding the conduct, or result of the conduct to which it applies, the culpable mental state applies to *each element* of the offense." [40]

But the Texas Legislature did not enact that provision. It specifically rejected the suggestion of the original code drafters and maintained its legislative right to attach culpable mental states only to the specific elements that it chose. Thus, Section 6.02(b), the Texas provision dealing generally with culpable mental states, reads quite differently from the corresponding Model Penal Code provision. Section 6.02 reads:

> (a) Except as provided in Subsection (b), a person does not commit an offense

unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

> (b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental is nevertheless required unless the definition plainly dispenses with any mental requirement. [41]

In Texas, the required culpable mental state applies to the conduct element, but the Legislature may define offenses in which the culpable mental state also explicitly applies to other elements. The Model Penal code provision, on the other hand, explicitly requires a culpable mental state for each material element. It reads:

> Except as provided in Section 2.05 [defining strict liability offenses], a person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently, as the law may require, *with respect to each material element of the offense.* [42]

**40.** TEX. PENAL CODE § 8.02, Practice Commentary.

**41.** TEX. PENAL CODE § 6.02.

**42.** MODEL PENAL CODE § 2.02(1). Sometimes Texas judges clearly would have preferred a Model Penal Code method of attaching a culpable *mens rea* to every element of an offense. Judge Clinton made a persuasive—if intellectually challenging—argument for the wisdom of a hybrid Model Penal Code policy in his concurring opinion in *Lugo–Lugo v. State*, 650 S.W.2d 72, 85–89 (Tex.Crim.App.1983). He did it by focusing on the concept of culpability rather than culpable mental states. But culpability is a broader concept than the more narrow concept of our four culpable mental states—intentionally, knowingly, recklessly, and negligently. Culpability includes those subsidiary acts or circumstances surrounding conduct or a result. For example, murder is the act ("cause") and the result ("death"). The culpable mental state goes to the result—a death, but causing a death is only blameworthy as murder if it is the death "of an individual." The element "of an individual"

is an adjectival description of what kind of death the actor must intentionally or knowingly cause. *Id.* at 88. As Judge Clinton noted, "[o]bviously, circumstances surrounding conduct could make an otherwise benign act dangerous." *Id.*

For example, suppose Dangerous Dan is moose hunting and marching through a moose-infested forest when he sees a moving patch of brown, senses a stirring in the bushes, and then hears a loud "moooo." He intentionally shoots at what he reasonably believes is a moose. Unfortunately, he finds the dead body of a fellow hunter who was wearing a moose-brown jacket and holding a moose-calling horn. Dan committed the bad act—he caused a death—and he did so with the culpable *mens rea*—intentionally—but he was mistaken about the type of death he caused; he killed an individual rather than a moose. His mistake negates the kind of culpability required for the offense of murder (shooting a moose during hunting season is not murder), and, if a jury finds that his mistake was a reasonable one, he should be

The Texas Legislature did not incorporate the language about "each material element" into Section 6.02(b), which requires only one culpable mental state or *mens rea* for one criminal act. We must assume that this omission was intentional. The Texas Legislature wanted to be able to add additional *mens rea* requirements to specific elements of certain offenses and omit them in others when it wanted to cast the risk—of a bad act, bad result, or the failure to pay attention to attendant circumstances—upon the actor.

## C. The Purpose of the Texas Statutory Defense of Mistake of Fact.

Generally, the legislature has great discretion in deciding upon the elements of a criminal offense and what culpable mental state, if any, applies to which elements of the offense.[43] That discretion is somewhat

limited by Section 6.02(b) of the Texas Penal Code which states, "If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element."[44] Thus, if a statutory offense does not include any culpable mental state—intentionally, knowingly, recklessly, or negligently—courts will presume that the legislature simply forgot and will read one into the statute unless it is manifestly clear that the legislature intended a strict-liability offense—one without any culpable mental state.[45]

However, the presumption that the legislature intended a culpable mental state applies only to the criminal conduct or "bad act," not to every element of the offense.[46] One *mens rea* (intentionally, knowingly, recklessly, negligently), plus

acquitted of murder, even though his mistake did not go to the culpable mental state of "intentionally." Our law does not punish every intentional killing as murder, only those intentional killings of individuals. What matters in this example is whether Dan's mistake was a reasonable one under all of the circumstances, so the jury must be instructed about the statutory mistake-of-fact defense.

Now look at an example of a mistake that negates the culpable mental state. Suppose the same hunting scenario, but this time Dan knows that his wife, not a moose, is hiding in the bushes. He testifies that he shot his rifle into the air to warn her that a real moose was charging at her from behind. The bullet goes up and then comes back down into his wife's head, killing her instantly. His defense is that he mistakenly thought a bullet shot upwards could not come down with enough velocity to hurt someone, and he did not intend to·cause anyone's death, much less that of his wife, when he shot his rifle. In this case, even a stupid, unreasonable mistake, rebuts the culpable mental state of intent, and the defendant does not need, and is not entitled to, an instruction on the statutory defense of mistake of fact. His defense is like that of Farmer Green who honestly (but perhaps unreasonably) thought the neighbor's hogs were his own. *See Green v. State*, 153 Tex.Crim. 442, 221 S.W.2d 612 (1949) (op. on reh'g).

43. *See Landrian v. State*, 268 S.W.3d 532, 535 (Tex.Crim.App.2008) ("The Legislature has considerable discretion in defining crimes and the manner in which those crimes can be committed. That discretion is limited only by the Due Process Clause of the federal constitution and the Due Course of Law provision of the Texas Constitution."); *Willis v. State*, 790 S.W.2d 307, 314 (Tex.Crim.App.1990) ("the power to create and define offenses rests within the sound discretion of the legislative branch of government"); *see, e.g., Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) ("There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition.").

44. Tex. Penal Code § 6.02(b).

45. *Aguirre v. State*, 22 S.W.3d 463, 472 (Tex. Crim.App.1999).

46. *See id.* at 473 (noting that omitting a culpable mental state from one portion of a criminal statute while including it in a second portion is a clear indication that the legislature intended to dispense with a mental element in that first portion); *see also Lomax v. State*, 233 S.W.3d 302, 305 (Tex.Crim.App. 2007) (in drafting felony-murder statute, legis-

one "bad act," equals one criminal offense. The culpable mental state must relate to the conduct (or the result), but not to any other element unless the legislature says so. Sometimes the legislature wants to attach a culpable mental state to more than one element, sometimes it does not.[47] For example, the State need not prove that a capital-murder defendant knew that the child he intentionally murdered was under ten years of age,[48] but it must prove that the capital-murder defendant knew that the peace officer he intentionally mur-

dered was a peace officer.[49] By choosing the wording of Section 6.02(b) instead of the corresponding Model Penal Code wording, the Texas Legislature kept the authority to add (or not add) a culpable mental state to additional elements beyond that of the forbidden conduct or result.[50] It has used that authority to omit additional culpable mental states when it wants to cast the attendant risk upon the actor.[51]

Sometimes a person has taken due care to avoid risk, but he has made a reason-

lature clearly intended to dispense with any additional culpable mental state beyond that required by the underlying felony).

47. *See Lambert v. People of the State of California*, 355 U.S. 225, 228, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) ("The legislature's authority to define an offense includes the power "to exclude elements of knowledge and diligence from its definition.").

48. Tex. Penal Code § 19.03(a)(8); *see In the Matter of M.A.*, 935 S.W.2d 891, 894 (Tex. App.–San Antonio 1996, no pet.) (concluding that the act of murder "requires intentional and knowing conduct, but there is no additional *mens rea* requirement attached to the age of the victim" under § 19.03(a)(8)). The court of appeals noted that Section 19.03(a)(1) requires the additional culpable mental state that the defendant "knows" that it is a peace officer or fireman that he is intentionally or knowingly murdering, but the legislature omitted that additional *mens rea* when the victim is a child. *Id.*

49. Tex. Penal Code § 19.03(a)(1); *see In the Matter of M.A.*, 935 S.W.2d at 894.

50. Some examples include: (1) indecency with a child under Section 21.11(a)(1)(A) ("A person commits an offense if, with a child younger than 17 years ... the person ... with the intent to arouse or gratify the sexual desire of any person ... exposes the person's anus or any part of the person's genitals, knowing the child is present"). The actor must expose his genitals with the "intent" to arouse someone's sexual desire, but he must also "know" that a child is present. Here, the legislature criminalized the conduct only if the person acted with a specific intent when

he exposed himself and he knew about the attendant circumstances; (2) deadly conduct under Section 22.05(b)(2) ("A person commits an offense if he knowingly discharges a firearm at or in the direction of ... a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied"). Here, the actor must engage in the conduct of shooting a gun with a "knowing" *mens rea*, and he must be at least "reckless" about the attendant circumstances of whether there are people in the building or car; (3) receipt of stolen property under Section 31.03(a),(b)(2) (a person commits an offense if, acting with the intent to deprive the owner, he ... appropriates property that is stolen and that he knows was stolen by another). *See Polk v. State*, 749 S.W.2d 813, 816 (Tex.Crim.App.1988) ("The elements of [receiving stolen property] are (1) a person, (2) with the intent to deprive the owner of property, (3) appropriates property, (4) which is stolen property, (5) knowing it was stolen, (6) by another.").

51. *See, e.g., Schultz v. State*, 923 S.W.2d 1, 3 (Tex.Crim.App.1996) (only culpable mental state in child abandonment statute, "intentional," goes to act of "abandonment," not to the "circumstances that expose the child to an unreasonable risk of harm"; "Had the Legislature intended to require that the actor be aware of the risk of harm, it would have been a simple matter to have included language to that effect."); *c.f.* Tex. Penal Code § 22.10 (offense of leaving a child in a vehicle requires an intentional leaving as well as knowledge of the circumstances—that the child is "under seven years old and not attended by a person fourteen or older.").

able mistake about some fact surrounding the offense. He has intentionally done the "bad act," but if the facts were as he reasonably believed them to be, he would not have committed any offense.[52] He is not morally blameworthy, and his mistake negates the kind of culpability or blame-worthiness that the offense is intended to punish. The mistake-of-fact defense set out in Section 8.02(a) safeguards conduct that is without guilt from criminal condemnation.[53] This is a crucial due-process provision that is not merely a redundant rebuttal of the culpable mental state.[54]

52. *See, e.g., People v. Watkins,* 2 Cal.App.4th 589, 594, 3 Cal.Rptr.2d 563, 566 (1992), in which the California court explained the common-law doctrine of mistake-of-fact:

> To determine whether a mistake of fact applies we must assume the facts were as the defendant perceived them. If under this assumed state of facts the defendant's actions would not have constituted a crime, the defense applies. Conversely, if under this assumed state of facts the defendant's actions would still have been unlawful, the defense does not apply.

*Id.* (citations omitted).

53. One of the objectives of the Penal Code is to "safeguard conduct that is without guilt from condemnation as criminal." Tex. Penal Code § 1.02(4). For example, the situation in *Hill v. State,* 765 S.W.2d 794 (Tex.Crim.App. 1989), shows how the statutory mistake-of-fact defense protects those whose conduct is without guilt even though they have intentionally committed the forbidden act. Dr. Hill prescribed Ritalin (a controlled substance), to a female patient. He was convicted of commercially dispensing a controlled substance without a valid medical purpose. The evidence was undisputed that Dr. Hill intentionally and knowingly dispensed a controlled substance, but his defense was that the woman (an undercover officer) told him that she had narcolepsy and that the symptoms she described and test results were consistent with that condition. He claimed to be mistaken about a specific fact—the patient had narcolepsy—and a reasonable mistake about that fact negates the kind of culpability required for the offense. His mistake did not negate the culpable *mens rea* "intentionally dispense a controlled substance," but it did negate an element—"without a valid medical purpose"—and it is this element that makes the "intentional dispensing" a criminal act. This Court held that Dr. Hill was entitled to an instruction on mistake of fact, and, because the trial judge had denied his request for such an instruction, he was entitled to a new trial. *Id.* at 797–98. On the other hand,

had Dr. Hill contended that he thought it was aspirin that he was prescribing, that evidence would directly rebut the culpable *mens rea.* He would not be entitled to an instruction on mistake of fact, but the jury need not believe that his mistake was reasonable. If he honestly, but stupidly, believed he was prescribing aspirin, he is not guilty of intentionally dispensing a controlled substance.

54. Some cases in which the fact mistaken does not directly rebut the culpable mental state, but some other element include those (1) concerning the nature of the substance possessed, *Sands v. State,* 64 S.W.3d 488, 493–95 (Tex.App.–Texarkana 2001, no pet.) (defendant entitled to mistake-of-fact instruction where he testified he thought syringe of methamphetamine contained vitamin B–12); *Pena v. State,* 353 S.W.3d 797, 814 (Tex.Crim.App.2011) (defendant claimed that truckload of what was asserted to be marijuana was really hemp to be used for crafts); (2) concerning whether property is "abandoned," *In re F.L.R.,* 293 S.W.3d 278, 280–81 (Tex.App.–Waco 2009, no pet.) (juvenile was entitled to instruction on mistake-of-fact defense when he claimed that he thought the sweatshirt he found in bleachers—when no one else was around and which had no markings or identification on it—had been abandoned, especially when coupled with private investigator's testimony that owner told him that he left his sweatshirt there); (3) concerning whether a person is in a car, *Granger v. State,* 3 S.W.3d 36, 38–39 (Tex.Crim.App.1999) (murder defendant who testified that he thought that the parked car he fired his gun at was unoccupied was entitled to mistake-of-fact instruction); (4) concerning whether the car that the defendant's car hit had fled the scene of the accident, *Loudermilk v. State,* 993 S.W.2d 382, 384–85 (Tex.App.–Eastland 1999, pet. ref'd) (in trial for failure to leave identification at accident and for leaving scene of collision without giving required information to driver of other vehicle, defendant was entitled to mistake-of-fact instruction when he and his

Take the classic law-school example of "mistake of fact" and theft. Theft is the appropriation of property with the intent to deprive the owner of that property without his effective consent.[55] The culpable mental state is "with the intent to deprive the owner of property" and the "bad act" is the taking of property without the owner's effective consent. The statute does not explicitly require the actor to *know* that the owner did not give effective consent.[56] The legislature cast upon the actor the duty to ensure that he is acting with the owner's effective consent when he takes someone else's property. But here's the law school hypothetical of the Dowager's Umbrella: Because it was about to rain, everyone who came to the Saturday church meeting, except Dan, brought a black umbrella and placed it into one of the vestry pigeonholes. Dan received an emergency call to come home during the meeting. He asked Susie, who was sitting next to him, if he could borrow her umbrella. She said, "Sure, take it and keep it. I have another. Mine is the black umbrella in the No. 2 pigeonhole." Dan took the black umbrella from the No. 2 pigeonhole and left. Unfortunately, that black, gem-encrusted umbrella belonged to the Dowager who had moved Susie's umbrella to make room for her own. She filed theft charges against Dan. Dan ap-propriated the black umbrella from pigeonhole 2, intending to keep it, and he did not have the Dowager's consent. He made a mistake and took the wrong umbrella. But he acted reasonably in taking what he thought was Suzie's black umbrella from pigeonhole 2 because he did have her consent. His conduct is morally blameless. His mistake negates the kind of culpability required of the offense of theft—taking someone else's property without their consent. If his belief had been correct (the umbrella he took was Suzie's), he would not have committed the offense of theft.[57] The mistake-of-fact defense exculpates Dan.

The law should not punish those who have made reasonable mistakes about the facts or circumstances surrounding their acts. That is the purpose of Section 8.02(a), the Penal Code defense of mistake of fact. The statutory defense does not go to the culpable mental state set out in the penal offense because, as Professors Perkins and Rollins explain, "even an unreasonable mistake, if entertained in good faith, is inconsistent with guilt if it negates some special element required for guilt of the offense such as intent or knowledge."[58] Honest but unreasonable mistakes that directly rebut the required culpable mental state simply negate one of the State's elements, and "[i]f any such element is found

---

passenger testified that traffic was moving normally after accident, they did not see that other car that came to rest under overpass, and they believed they were victims of "hit-and-run").

55. TEX. PENAL CODE § 31.03.

56. *Id.,* § 31.03(b)(1). Theft of stolen property, prohibited by Section 31.03(b)(2)—the very next section of the theft statute—does require the actor to know that the property was stolen by another when he appropriates it, so it seems apparent that the legislature consciously omitted any culpable mental state for the attendant circumstance of "without the own-er's effective consent" from Section 31.03(b)(1).

57. *See* ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 1045 (3d ed.1982). The professors set out the general rule:

[M]istake of fact will disprove a criminal charge if the mistaken belief is (a) honestly entertained, (b) based upon reasonable grounds and (c) of such a nature that the conduct would have been lawful and proper had the facts been as they were reasonably supposed to be.

58. *Id.* at 1046.

to be wanting, guilt has not been substantiated; and hence if proof of a mistake of fact, even without the support of reasonable grounds, negatives the existence of such an element, it also disproves the charge itself." [59]

To return to the 1949 case of *Green v. State:* If Farmer Green honestly believed that the hogs he killed were his own, it does not matter if his mistake was reasonable. He did not commit the offense of theft because he did not intend to appropriate someone else's property. He is rebutting the State's element of "intent to deprive" and he does not invoke the mistake-of-fact defense. If, however, he reasonably but mistakenly thought that the hogs belonged to Farmer Jones (when in fact they belonged to Farmer Dell) who had given Farmer Green consent to slaughter his hogs, then the statutory defense applies and Farmer Green is entitled to an instruction on mistake of fact. Farmer Green had the intent to deprive Farmer Jones of his hogs, but he thought that he had the owner's consent to do so. If the hogs had been Farmer Jones's then his "conduct would have been lawful and proper had the facts been as they were reasonably supposed to be." [60]

The question in this case is whether the statutory defense of mistake-of-fact that had existed in Texas from at least 1867 until 1974 was carried forward in the 1974 Penal Code or whether the Texas Legislature intended to abandon its tried-and-true approach to that defense by rendering the statutory defense a virtual nullity. That former approach was simple and effective: a defendant was entitled to raise a mistake of fact relating to any fact required for conviction, but it had to be reasonable one before it would exculpate him. The two exceptions to the general statutory rule were: (1) if the mistake negated the culpable mental state, no instruction was needed and the defendant's good faith (even if stupid) mistake would exculpate him; and (2) the mistake-of-fact defense did not apply to statutory rape because a child under the legal age could not consent to intimate acts.

Unfortunately, many cases from this Court interpreting and applying the post–1974 Penal Code statutory defense of mistake of fact versus rebuttal of the culpable mental state have been less than clear. Take, for example, *McQueen v. State,*[61] in which this Court held that a mistake-of-fact defense applied in an unauthorized use of a motor vehicle case when the defendant claimed that he had consent to drive what he mistakenly believed was Tim Eden's motorcycle.[62] The statutory defense of mistake of fact under Section 8.02 should, and does, apply to this scenario. McQueen's mistaken belief, if reasonable, would negate the kind of culpability required for the offense because, had his belief that Tim Eden did own the motorcycle been true, then McQueen would not have been guilty of any crime. Unfortunately, in *McQueen,* this Court perpetuated the mistake of quoting a statement from *Beggs v. State,*[63] citing the Practice Commentary to Section 8.02 that the "kind of culpability" specified in Section 8.02

59. *Id.*

60. *Id.* at 1045.

61. 781 S.W.2d 600 (Tex.Crim.App.1989).

62. *Id.* at 603 ("The mistake of fact was the defendant's erroneous belief that he had the owner's consent to use the vehicle. Since a

mistake of fact defense is available only if it negates the culpable mental state required for he commission of the underlying offense, ... such requisite mental state must pertain to the defendant's belief about the owner's effective consent.").

63. 597 S.W.2d 375 (Tex.Crim.App.1980).

means "culpable mental state." [64] But that commentary was written by a practitioner, not any court or legislator, and it was written for the 1970 Proposed Penal Code, not the provision that was actually enacted in 1974. That single little error—relying upon an inapplicable commentary by a practicing lawyer rather than the explicit language of the statute—has been responsible for virtually all of the subsequent problems in addressing the mistake-of-fact defense. Because of that initial error, this Court, in *McQueen*, concluded that it would attach a culpable mental state of "knowing" to the element of "without the effective consent of the owner" so that the mistake-of-fact defense would apply to a culpable mental state. But the Legislature did not attach a culpable mental state to "without the effective consent of the owner," and it was not required to do so. [65] It could, and did, cast the duty of care and inquiry upon the actor to inquire as to ownership. But, just as with the Dowager's Umbrella, if a person made a reasonable mistake about who the owner was and whether he had that person's consent, then he may invoke the statutory defense of mistake of fact.

### D. Mistake–of–Fact and "Licensed to Practice Law."

The mistake-of-fact defense indisputably would have applied to the offense of falsely holding oneself out as a lawyer under the pre–1974 Penal Code provision concerning mistake of fact. Indeed, in the 1889 case of *Pettit v. State*, the court of appeals held that the defendant doctor, charged with practicing medicine without having first filing his certificate, was entitled to an instruction on the statutory defense of mistake. [66] Practicing medicine without filing one's license is directly analogous to, and

---

**64.** 781 S.W.2d at 603 n. 2 (citing *Beggs*, 597 S.W.2d at 378).

**65.** In *McQueen*, this Court implied that the legislature just forgot to include an explicit culpable mental state for the element of "without the effective consent of the owner" and declared that the offense would be one of strict liability unless it judicially added a second one:

> Thus, once the State proved that the vehicle was operated at all, the requisite mental state with regard to the nature of conduct would be self-proved, (we cannot foresee any time one would operate a vehicle unintentionally or unknowingly), and the defendant would be held liable regardless of anyone's awareness of the owner's consent or lack thereof. To require culpability only as to the otherwise lawful act of operating a vehicle wholly fails to "safeguard conduct that is without guilt from condemnation as criminal."

*Id.* at 604. That would be a persuasive argument if the statutory defense of mistake of fact did not exist and could not be invoked to the element of "without the owner's effective consent." And, in fact, the *McQueen* Court did not require the State to prove that McQueen knew he did not have the motorcycle owner's effective consent; proof "that appellant did not have the consent of Bobby Akin, the owner of the motorcycle" was sufficient to prove that "appellant knew he did not have Akin's consent." *Id.* at .604–05. This was all a very topsy-turvy way of coming to the right conclusion. If the Court had not been beguiled by the inapplicable practice commentary about how the Texas Legislature supposedly intended that the phrase "the kind of culpability required for the offense" really meant the different phrase, "the culpable mental state," this Court and others would not have made the mistake of inappropriately adding multiple culpable mental states to offenses when the Legislature did not do so. Presumably the Legislature knew that it did not need to do so because the statutory defense of mistake of fact was available to a defendant who had exercised reasonable care, did make reasonable inquiry, and whose reasonable mistake negated the required culpability for the offense.

**66.** 28 Tex.App. 240, 14 S.W. 127, 127 (1889) (defendant had obtained his medical certificate and given it to a man who said he was going to the county-seat that day and would record the license, but evidence showed that

substantially similar to practicing law without a license, so if the Texas Legislature carried forward its former mistake-of-law statute into the 1974 Penal Code, that defense would certainly apply to Section 38.122.

Presiding Judge Keller's opinion in *Thompson* is the most recent discussion of the purpose and history of the current Texas provision dealing with the mistake-of-fact defense under § 8.02(a).[67] The same understanding of the mistake-of-fact defense in *Thompson* would also apply to reasonable mistakes concerning whether the defendant was properly licensed and authorized to practice law in Texas.

The offense of falsely holding oneself out as a lawyer has only one culpable mental state: the intent to obtain an economic benefit for himself.[68] Thus, a person is not subject to criminal penalties under this statute if he falsely says that he is a lawyer, but he does not have any intent to benefit economically from that falsehood. Some non-criminal examples, as the plurality notes, include a third-year law school student's "puffery" to friends and relatives that he is a lawyer, the inmate "writ-writer" who files legal papers for fellow inmates as an act of friendship, the "catch-me-if-you-can"[69] pseudo-lawyer who provides nothing but *pro bono* representation.[70]

In this case, the plurality explains that the Legislature could, and did, cast the duty of complying with all of the Texas attorney licensing requirements upon the actor. The practice of law is a highly regulated profession, and legislatures may reasonably heighten the duties of those in particular professions that affect public health, safety, or welfare.[71]

The controlling purpose of all laws, rules, and decisions forbidding unli-

---

this man suddenly fell ill and did not make the trip, and defendant had, meanwhile, treated patients that day; "If the defendant, at the time he practiced medicine as charged against him, labored under the mistake that his certificate had been filed for record in Van Zandt county, and if said mistake did not arise from a want of proper care on his part, he was entitled to be acquitted.").

67. *Id.* at 789; *see also Louis v. State,* 393 S.W.3d 246, 252–54 (Tex.Crim.App.2012) (following *Thompson,* and holding that defendant in capital-murder prosecution was entitled to mistake-of-fact instruction that he reasonably thought his "spankings" of child would not cause serious bodily injury).

68. Tex. Penal Code § 38.122. *See Satterwhite v. State,* 979 S.W.2d 626, 628 (Tex.Crim.App. 1998) (offense of falsely holding oneself out as a lawyer has three elements: "First, appellant intended to obtain an economic benefit for himself by representing Mr. Lemke. Second, appellant held himself out as a lawyer to Lemke. Thirdly, appellant was not in 'good standing' with the State Bar at the time he represented John Lemke because he was in default in the payment of his bar dues resulting in the suspension of his law license.") (footnote omitted).

69. *See Catch Me If You Can* (Dreamworks 2002), the Steven Spielberg movie in which Leonardo Di Caprio played the role of Frank Abagnale, Jr., who swindled millions as he falsely acted as a Pan Am pilot, a doctor, and a prosecutor.

70. *See* Plurality Op. at 13 n. 11.

71. *Morissette v. United States,* 342 U.S. 246, 254–56, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (noting that "public welfare offenses" regulate "the duties of those in control of particular industries, trades, properties or activities that affect public health, safety or welfare."); *see also Aguirre v. State,* 22 S.W.3d 463, 475 n. 44 (Tex.Crim.App.1999) (noting that the members of certain professions may be required to meet "special skill and attention" and "if the law is broken there will be a suspicion that it was a deliberate breach due to self-interest") (quoting Glanville Williams, Criminal Law 235 (2d ed.1961)); *Tovar v. State,* 978 S.W.2d 584, 586–88 (Tex.Crim.App. 1998) (violation of the Open Meeting Act required only the culpable mental state of knowingly calling a meeting, not that the person knew whether an open meeting was required).

censed persons to practice law is to protect the public against persons inexperienced and unlearned in legal matters from attempting to perform legal services. The objective is to protect the public against injury from acts or services, professional in nature, deemed by both the legislature and the courts to be the practice of law, done or performed by those not deemed by law to be qualified to perform them.[72]

But the crime of falsely holding oneself out as a lawyer is not a strict liability offense as it does contain a culpable mental state requirement: the intent to obtain an economic benefit.[73] And, to protect against conviction of a crime when a person has taken all reasonable care to ensure that he is in compliance with the pertinent attorney licensing requirements, a defendant may invoke the statutory mistake-of-fact-defense.[74] Of course, if the former Penal Code mistake-of-fact statute was carried forward into the 1974 Penal Code, a mistake-of-fact defense would apply even to strict-liability, public-welfare offenses such

as the sale of adulterated food or using a false scale, because that defense applied under the former law.[75]

To establish his entitlement to a mistake-of-fact instruction in the prosecution of an offense under Section 38.122, the defendant must offer some evidence that he reasonably believed that

(1) He was currently licensed to practice law in Texas, some other state, or some other country;

(2) He was currently in good standing with the State Bar of Texas; and

(3) He was currently in good standing with the state bar or other licensing authority of the licensing state or jurisdiction.[76]

A defendant is not entitled to a jury instruction on his mistake-of-fact defense unless he has offered some evidence to support a finding on each of these three requirements.

### E. Appellant Was Not Entitled to a Mistake–of–Fact Instruction.

In this case, appellant argues that he offered some evidence to support a finding

**72.** *Brown v. Unauthorized Practice of Law Committee*, 742 S.W.2d 34, 41–42 (Tex.App.–Dallas 1987, writ denied) (citations omitted).

**73.** *See* WILLIAMS, *supra* note 71, at 244 ("we cannot classify crimes exclusively into crimes of strict responsibility and crimes requiring fault. The same crime may be of strict liability in respect of one element and require fault in respect of another."); *see, e.g., Zubia v. State*, 998 S.W.2d 226 (Tex.Crim.App.1999) (in offense of injury to child, culpable mental state does not apply to age of child); *Johnson v. State*, 967 S.W.2d 848 (Tex.Crim.App.1998) (same for offense of indecency with child).

**74.** *See Satterwhite*, 979 S.W.2d at 630 (Mansfield, J., concurring). In this prosecution for falsely holding oneself out to be a lawyer, Judge Mansfield noted:

Concern has been expressed that our holding in this case might lead to criminal liability for, potentially, thousands of attorneys

who inadvertently send their bar dues in a few days late, whose checks are "lost in the mail" or who, accidently, send a check for the wrong amount. Another situation, quite common, is where the check is returned for insufficient funds when the remitter, in good faith, believed there were sufficient funds in his account to cover the check. I believe this concern is misplaced. The State must prove intentional, knowing or reckless conduct on the part of the accused to obtain a conviction under Texas Penal Code § 38.122; such would rarely be provable in the instances cited in the two previous sentences. In any event, anyone indicted under section 38.122, where such circumstances existed, would have available the defense of mistake of fact under Texas Penal Code § 8.02.

*Id.*

**75.** *See supra*, notes 14 & 15.

**76.** *See* TEX. PENAL CODE § 38.122.

that he reasonably believed that he was licensed to practice law in Mexico and was in good standing with the licensing authority in Mexico. He submitted a written jury instruction to that effect.[77] Unfortunately, appellant failed to offer any evidence (or instruction) that he reasonably believed that he was a member in good standing of the State Bar of Texas.[78]

A person who is licensed to practice law in some other state or country cannot just waltz into Texas and set out his attorney shingle. He must comply with the Texas State Bar requirements first. It is patently unreasonable for any attorney to think that he could freely roam the world practicing law in whatever jurisdiction he desired simply because he was licensed to practice law in some other jurisdiction.

Here, the trial judge noted that appellant had not pointed to any evidence that he had the reasonable but mistaken belief that he was in good standing with the State Bar of Texas and therefore declined to give an instruction on mistake of fact. Appellant argued that "a mistake of fact can go to any of the elements of the offense and not to all of them at one time." True enough, but appellant's mistaken belief about being licensed in Mexico and in good standing in that jurisdiction, if true, would not "negate the kind of culpability required for the offense" and would not exonerate him from guilt. The practical test for whether a defendant is entitled to a mistake-of-fact defense is this: If the facts were as the defendant mistakenly believed them, would he be innocent of the charged offense?[79] In this case, appellant

**77.** Appellant's requested instruction read as follows:

> You are instructed that it is a defense to prosecution that a person through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.
> A reasonable belief means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.
> So if you find from the evidence in this case that at the time the defendant held himself out as an attorney licensed in Mexico that he acted under a mistake of fact, that is, the defendant had a reasonable belief that he was licensed to practice law in Mexico and was in good standing with the licensing authority in Mexico, or if you have a reasonable doubt thereof, you will acquit the defendant and find the defendant "not guilty."

**78.** The trial judge instructed the jury on "good standing" as follows:

> "Good Standing with the State Bar of Texas" means:
> (1) Being a "Member in Good Standing" of the State Bar of Texas; or
> (2) Being certified to practice in Texas as a Foreign Legal Consultant by the Texas Board of Law Examiners.

> A "Member in Good Standing" of the State Bar of Texas is someone who meets and complies with all applicable requirements of the Rules of the Supreme Court of Texas governing admission to the bar of Texas and who is not in default of payment of dues and who is not under suspension from practice.
> A "Foreign Legal Consultant" is someone certified under the rules of the Supreme Court of Texas governing admission to the Bar of Texas, and who is considered a lawyer affiliated with the Bar of Texas.

**79.** The cases decided under Texas's former mistake-of-fact statute, did not require that the mistake totally absolve the defendant from all blame or culpability, rather it would exculpate him of the *charged* offense. For example, in one delicious 1920 case, *Vyoral v. State*, 88 Tex.Crim. 34, 224 S.W. 889 (1920), the defendant was charged with aggravated assault of a female during a "road rage" altercation in which he, from his car, threw a wrench at Mrs. Garrett, the driver of a horse buggy. The sole aggravating factor in the case was the fact that the victim was a female, otherwise the offense was a simple assault. The defendant claimed that he was entitled to an instruction on mistake of fact when he testified that he reasonably believed that Mrs. Garrett was a man because she was "wearing

would not be innocent, because he was required to have a reasonable belief that he was in good standing with the State Bar of Texas as well as being licensed and in good standing in Mexico.

I respectfully disagree with the plurality's holding that the mistake-of-fact defense cannot apply to any element except the culpable mental state, but because appellant failed to offer evidence of his entitlement to a mistake-of-fact instruction, I concur in the Court's judgment.

a man's hat and shirt, and presenting the general appearance of a man while in the buggy[.]" *Id.* at 889. We explained,

> [I]f Mrs. Garrett was wearing the apparel of a man, and presented the appearance of one, and appellant was misled into the belief that she was a man, without fault or want of care upon his part, we know of no reason why he would not be afforded the benefit of the law as applied in criminal cases of an honest mistake of fact. The mistake, if the jury found it existed, while it would not have excused, it would have mitigated, the offense.

*Id.* This mistake did not, of course, rebut the defendant's culpable mental state of intentionally or knowingly causing bodily injury, nor did it exculpate him from *all* culpability, but it did mitigate the offense, and therefore he was entitled to such an instruction.

Suppose a modern-day actor was charged with aggravated robbery of an elderly person and article 41 was still Texas law. If the defendant reasonably believed that the person he was assaulting and whose property he was trying to take was, in fact, under the age of 65 (think Sally Field, Diana Ross, Mia Farrow, Al Pacino, Harrison Ford, Robert Redford), the defendant could rely on *Vyoral* as precedent for his entitlement to a mistake-of-fact instruction that could lower the offense from a first degree felony offense under Section 29.03(a)(3), to a second degree robbery under Section 29.02(a).